**Murray SEIDEN et al., Plaintiffs,**

v.

**Elmer L. NICHOLSON et al., Defendants.**

**No. 74 C 3117.***

United States District Court, N. D. Illinois.

Jan. 30, 1976.

* and the following related cases: Nos. 74 C 3642, 75 C 0130, 75 C 0196, 75 C 0272, 75 C 0347, 75 C 0415, 75 C 0553 and 74 C 0603.

Lawrence Walner, Chicago, Ill., Liaison Counsel for plaintiffs.

Don H. Reuben, Gary M. Elden, Shane H. Anderson, Philip C. Stahl, Kirkland & Ellis, Chicago, Ill., Liaison Counsel for defendants.

## MEMORANDUM AND ORDER

ROBSON, Senior District Judge.

This cause is before the court on the plaintiffs' motion for a class action determination pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the reasons hereinafter stated, this motion shall be granted as to all of the plaintiffs' claims under consideration here except the common law fraud claim alleged in Count V of the First Consolidated and Amended Complaint. This court determines that henceforth Messrs. Robert S. Bassman, Murray Seiden, Seymour Trager and Marshall Weinstein shall be the sole representatives of the class.

The plaintiffs have filed a First Consolidated and Amended Complaint asserting that the action is brought pursuant to Sections 10(b) (15 U.S.C. § 78j(b)), 14 (15 U.S.C. § 78n), and 20 (15 U.S.C. § 78t) of the Securities Exchange Act of 1934, the rules promulgated thereunder and principles of common law. Jurisdiction is predicated upon Section 27 of the Securities Exchange Act of 1934 and principles of pendent jurisdiction. The plaintiffs allege that the defendants, directly and indirectly, used means and instrumentalities of interstate commerce, and of the mails, and the facilities of national securities markets in connection with the acts and transactions alleged in their complaint.

Basically, the plaintiffs assert that the defendants, other than Dreyfus Fund, Inc., engaged in a continuing course of fraudulent conduct, the purpose and effect of which were to artificially inflate the market price of CNA Financial Corp. (hereinafter referred to as CNA) securities and cause the plaintiffs to purchase CNA securities for an excessive consideration during the period of approximately January 1, 1969 to approximately December 31, 1974.

The defendants' alleged wrongful course of conduct included the issuance of annual reports, interim reports, proxy statements, press releases, and other pronouncements which had the cumulative effect of artificially inflating CNA's income and prospects. The false picture was purportedly the result of CNA's non-disclosures and misrepresentations relating to two main areas of CNA's business: its insurance operations and its real estate operations.

The motion of the plaintiffs which is before the court is solely concerned with Counts I, II, V and VI of the First Consolidated and Amended Complaint. Counts III, IV and VII are derivative counts, and, accordingly, are inappropriate for consideration at this time.

The plaintiffs have defined the allegedly injured class for Counts I, II and V "as all those persons who purchased or acquired CNA securities during the period of approximately January 1, 1969 to approximately December 31, 1974, and sustained damages thereby." Paragraph 8, First Consolidated and Amended Complaint. The plaintiffs have defined the class bringing the Count VI claim which relates to the Loews' tender offer as "all persons who tendered their CNA securities pursuant to the aforesaid tender offer and did not receive payment therefor on or prior to December 3, 1974." Paragraph 62, First Consolidated and Amended Complaint. The defendants have specifically preserved for the future, when discovery has better elucidated the claims of the plaintiffs, any contest regarding the plaintiffs' class definition in paragraph 8 of the First Consolidated and Amended Complaint.

The defendants' response to the plaintiffs' class action motion indicates only two issues of contention: (1) The alleged class action does not pass muster because individual issues predominate and a class action is unmanageable; and (2) Alternatively, several of the groups attempting to represent the class are improper class representatives.

This court is of the opinion, and the defendants apparently agree, that the plaintiff class fulfills the numerosity requirement of Rule 23(a)(1)[1] and that a class action is appropriate under Rule 23(a)(2)[2] in that there are questions of law or fact common to the class, e. g., whether or not the defendants engaged in a course of conduct which artificially inflated the price of CNA securities with resulting harm to the class purchasers of such securities. The defendants apparently feel, and this court agrees, that the Rule 23(a)(3)[3] typicality requirement is met. The defendants have focused their objections on the Rule 23(a)(4)[4] prerequisite of adequate representation and on the Rule 23(b)(3)[5] requirement that common issues must predominate over issues affecting only individual members of the class. The defendants argue that this class action is unmanageable and assumedly maintain that a class action is an inferior method of adjudicating this suit.

It is well known that before a class action may be maintained all four of the Rule 23(a) requirements must be satisfied and, in addition, one of the Rule 23(b) prerequisites must be met. In their First Consolidated and Amended Complaint the plaintiffs stated that their action is brought under Rules 23(a), 23(b)(1)(B), and 23(b)(3) of the Federal

1. A class action is proper "if (1) the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1).

2. A class action is proper "if . . . (2) there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2).

3. A class action is proper "if . . . (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3).

4. A class action is proper "if . . . (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R. Civ.P. 23(a)(4).

5. A class action is proper "if . . . (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3).

Rules of Civil Procedure. Paragraph 6, First Consolidated and Amended Complaint. However, the plaintiffs' motion for a class action determination is devoid of any reference to Rule 23(b)(1)(B), and for that reason this court finds it unnecessary to consider that portion of Rule 23. Instead, this court's discussion will revolve around the disputed elements of (a) and (b)(3) of Rule 23.

*The Issues of Predomination and Manageability*

■ The genesis of the defendants' contention that individual issues predominate in the case before this court is the recent United States Supreme Court decision in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). The defendants cite *Blue Chip* as authority for their argument that Rule 10b–5 (17 C.F.R. § 240.10b–5) cannot be expanded so as to ignore the requirements set out in the express liability sections of the securities laws. This reasoning misleads the defendants to the conclusion that Section 9 of the Securities Exchange Act of 1934 governs liability for the market manipulation alleged by the plaintiffs in the instant case and Section 18 of the Securities Exchange Act of 1934 controls all cases, such as the one before this court, where alleged misrepresentations are contained in documents filed with the Securities and Exchange Commission. Therefore, defendants continue, the plaintiffs must prove all the elements of a cause of action contained in those provisions, and thus individual issues allegedly predominate over the common issues.

Although the defendants acknowledge that the precise holding in *Blue Chip* was that only purchasers or sellers have standing to pursue a private civil action under Rule 10b–5, they fail to indicate that the United States Supreme Court specified that "[t]he *only* portion of the litigation thus initiated which is before us is whether . . . [a person] may base . . . [an] action on Rule

10b–5 of the Securities and Exchange Commission without having either bought or sold the securities described in the allegedly misleading prospectus." 421 U.S. at 727, 95 S.Ct. at 1921 (emphasis added). When the *Blue Chip* Court, referring to Sections 9 and 18 of the 1934 Act, stated that "[i]t would indeed be anomalous to impute to Congress an intention to expand the plaintiff class for a judicially implied cause of action beyond the bounds it delineated for comparable express causes of action," 421 U.S. at 736, 95 S.Ct. at 1925, it was only talking about standing to bring an action and the buyer-seller limits of a plaintiff class—the issue before the Court at the time.

Analogous to the *Blue Chip* Court's statement that when Congress desired to provide a remedy to non-purchasers and non-sellers of securities, "it had little trouble in doing so expressly," 421 U.S. at 734, 95 S.Ct. at 1925, citing Section 16(b) of the 1934 Act, is the position of this court that if Congress intended that a plaintiff with an alleged cause of action under either Rule 10b–5 or an express liability provision of the 1934 Act, e. g., Section 9, must rest his allegations on the express liability provision, Congress would have had no problem in vocalizing its intent. The Seventh Circuit in *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287 (7th Cir. 1975), confronted with an action which could have been brought under either Section 9 or Section 10(b) of the 1934 Act and Rule 10b–5, utilized the rationale applied in *Jordan Building Corporation v. Doyle, O'Connor & Co.,* 401 F.2d 47, 51 (7th Cir. 1968), and stated that the securities acts are cumulative and not mutually exclusive:

[T]he remedies afforded by section 9(a)(2) are not, as the defendants contend, the plaintiffs' sole remedy for market manipulation. The plaintiffs may make their claim for relief under Rule 10b–5 even though the alleged market rigging scheme also falls squarely within section 9(a)(2). Their

remedies are cumulative. They may make their claim for relief under either or both or several sections of the acts.

509 F.2d at 1292–93.[6]

The adoption of the defendants' version of the *Blue Chip* rationale would ultimately result in at least the partial demise of Section 10(b) and Rule 10b–5 and the potential overruling of *all* Section 10(b) and Rule 10b–5 cases which could have been brought under any other provision of the 1934 Act. These results are not warranted by the *Blue Chip* holding.[7]

The defendants specifically assert that *Blue Chip* reaffirms that individual reliance must be proven in cases brought under Rule 10b–5. This argument is allegedly supported by the following statement in *Blue Chip*:

> The very real risk in permitting those in respondent's position to sue under Rule 10b–5 is that the door will be open to recovery of substantial damages on the part of one who offers only his own testimony to prove that he ever consulted a prospectus of the issuer, that he paid any attention to it, or that the representations contained in it damaged him.

421 U.S. at 746, 95 S.Ct. at 1930. The defendants fail to elaborate on the very next utterances of the Court:

> The virtue of the *Birnbaum* rule [limiting standing to a buyer or seller],

simply stated, in this situation, is that it limits the class of plaintiffs to those who have at least dealt in the security to which the prospectus, representation, or omission relates. And their dealing in the security, whether by way of purchase or sale, will generally be an objectively demonstrable fact in an area of the law otherwise very much dependent upon oral testimony.

421 U.S. at 747, 95 S.Ct. at 1931. The Court's concern was with the abuses and problems inherent in proving a negative, and not with the issue of proving reliance.[8]

The defendants make much of the fact that the wrongdoers in *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741, *rehearing denied,* 407 U.S. 916, 92 S.Ct. 2430, 32 L.Ed.2d 692 (1972), a case denying that proof of reliance is a prerequisite to recovery, made no disclosures whatsoever. However, the statement of the Court in *Affiliated Ute* was:

> Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.

406 U.S. at 153–54, 92 S.Ct. at 1472. Similarly, the case before this court involves allegations relating primarily to

---

**6.** This case has been submitted to the United States Supreme Court for explicit consideration of the issue presently before this court: Whether or not a person, whose cause of action falls within the confines of Section 10(b) and Rule 10b–5 promulgated thereunder, must instead rely upon express liability provisions of the securities acts where such provisions are applicable. *Rodman & Renshaw v. Schaefer,* No. 74–1407, 44 U.S.L.W. 3046 (July 22, 1975). Thus far, the United States Supreme Court has neither granted nor denied certiorari in this action.

**7.** This court gratuitously submits that even if it was determined that this cause of action

*must* be brought .under the express liability provisions proffered by the defendants, there is recent authority supporting the use of separate trials for adjudicating the issues of reliance, knowledge, etc. *See* 3B Moore ¶ 23.-45[1] at 23–703 n. 13 and discussion *infra.*

**8.** Likewise, this was the concern when the concurring opinion to which the defendants referred stated: "It frequently would be impossible to refute a plaintiff's assertion that he relied on the prospectus, or even that he made a decision not to buy the offered securities." 421 U.S. at 761, 95 S.Ct. at 1937.

CNA's failure to disclose certain purportedly relevant facts. The *Affiliated Ute* Court also embraced the earlier philosophy espoused by the United States Supreme Court in *SEC v. Capital Gains Research Bureau,* 375 U.S. 180, 186, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963), to-wit: The fundamental purpose of the 1934 Act and its companion legislative enactments is to substitute a philosophy of full disclosure for the antiquated *caveat emptor* viewpoint. 406 U.S. at 151, 92 S.Ct. 1456. Thus, securities legislation should be construed flexibly so as to effectuate its purpose of avoiding fraud. 406 U.S. at 151, 92 S.Ct. 1456, citing 375 U.S. at 195, 84 S.Ct. 275. *See also Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).

■ Moreover, this court is of the opinion that even if the underlying philosophy of the securities acts could be interpreted to dictate that in the instant case individual reliance must be proven, there is an abundance of authority for the proposition that reliance is an issue which can be treated in subsequent proceedings, and a class action should not be precluded where individual reliance must be shown. *E. g., Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Ungar v. Dunkin' Donuts of America, Inc.,* 68 F.R.D. 65, 140 (E.D.Pa. 1975); *Feldman v. Lifton,* 64 F.R.D. 539, 548 (S.D.N.Y.1974); 3B Moore ¶ 23.45[1] at 23–703 n. 13. Similarly, it has been determined that the existence of individual statute of limitations problems does not affect the propriety of a class action determination. 68 F.R.D. at 140; *Bisgeier v. Fotomat Corporation,* 62 F.R.D. 113, 116 (N.D.Ill.1972).

■ In Count V of the First Consolidated and Amended Complaint the plaintiffs allege that the defendants' purported wrongdoing supports a claim for common law fraud. Generally, the law of the several states delineates multitudinous elements of a tort cause of action for misrepresentation. These elements are: a representation; its falsity; its materiality; speaker's knowledge of its falsity or ignorance of its truth; his intent that it should be acted on by the person and in the manner reasonably contemplated; hearer's ignorance of its falsity; his reliance on its truth; his right to rely thereon; and his consequent and proximate injury. 68 F.R.D. at 144, citing 37 C.J.S. Fraud § 3 (1943 and Supplement) (footnote omitted).

Obviously, a common law fraud claim raises issues which are personal to each individual plaintiff and, therefore, not common to the class. Since individual issues predominate on common law fraud claims, this court is of the opinion that these claims should not be certified for class determination. 68 F.R.D. at 144–45.

For the foregoing reasons, this court determines that all of the Rule 23(a) and Rule 23(b)(3) requirements are fulfilled except as to the common law fraud claim raised in Count V.

## The Issue of Adequate Representation

Alternatively, the defendants contend that, if this court accords to this suit class action status, some of the named plaintiffs are not adequate representatives of the class.

■ This court is mindful of its duty in class action litigation to eliminate the possibility of unreasonable charges for attorney fees. *In re Transit Company Tire Antitrust Litigation,* 67 F.R.D. 59, 64 n. 2 (W.D.Mo.1975), citing Manual for Complex Litigation, § 1.47, Part 1 (Jan. 1, 1973 ed.) In choosing the class representative, the court must consider the best interests of the class members and the goal of a speedy, inexpensive and just determination of the case. Manual for Complex Litigation, § 1.44, Part 1 (Jan. 1, 1973 ed.) With these guidelines in mind, this court analyzes the individual named plaintiffs whose representation is contested by the defendants.

*Mr. Fred Lowenschuss*

The defendants vociferously contend that Mr. Fred Lowenschuss, who seeks representative status in this action as Trustee for Fred Lowenschuss Associates Pension Plan, is an inadequate representative of the class under Rule 23(a)(4) of the Federal Rules of Civil Procedure. The following are the defendants' reasons for submitting that Mr. Lowenschuss is an inadequate representative: (1) He purchased stock solely in his capacity as trustee of the pension plan and, therefore, has conflicting fiduciary obligations; (2) He is attempting to act both as a class representative and as an attorney for the class; (3) Mr. Lowenschuss is the sole trustee of the pension fund, and Mr. Lowenschuss' law firm, which represents the trust, is advancing the litigation costs absent any obligation on the part of the trust to reimburse the firm if such costs are not recovered, thereby violating DR 5–103(B) of the Code of Professional Responsibility; (4) He is acting as the attorney for the trust with the knowledge that he will have to be the trust's witness, thereby violating EC 5–9 of the Code of Professional Responsibility; (5) Since there is a virtual identity between the Lowenschuss trust and the Lowenschuss law firm, an appearance of impropriety exists since it can be inferred that an attorney has instituted a class action so that he can represent the class; (6) The deposition testimony of Mr. Lowenschuss forms the basis for embarrassing cross-examination which might prejudice absent class members in that Mr. Lowenschuss verified the First Consolidated and Amended Complaint even though he was unaware of the contents of same; and (7) Mr. Lowenschuss unreasonably and in bad faith obstructed discovery.

Without ruling on all of the above points of contention enunciated by defendants, this court is of the opinion that Mr. Lowenschuss is not an adequate representative of the class. Mr. Lowenschuss is attempting to act as both a class representative and as a class attorney and intends to continue to do so. Although there is some authority *contra,* this court determines that the better reasoned view dictates that if a person is a member of two groups with distinct and conflicting interests, and if the economic interest in one of his roles significantly outweighs the economic interest in the other, such person cannot adequately represent the latter group. *duPont v. Wyly,* 61 F.R.D. 615, 623 (D.Del. 1973).

This court feels that the interests of Mr. Lowenschuss as an attorney are significantly antagonistic to those of the class of shareholders, which class he purports to represent, so as to render Mr. Lowenschuss an improper representative of such class. *See Phillips v. Klassen,* 163 U.S.App.D.C. 360, 502 F.2d 362, 366, *cert. denied,* 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974). Even where the plaintiff attorney is merely associated with the firm representing him, the situation here, it has been held that he cannot adequately protect the interests of the class. *Kriger v. European Health Spa, Inc. of Milwaukee, Wisconsin,* 56 F.R.D. 104, 105 (E.D.Wis.1972). Recently, it was decided in this district that "it is necessary to eliminate so far as possible the likelihood that . . . the named plaintiffs have interests antagonistic to those of the remainder of the class." *Cullen v. United States,* 372 F.Supp. 441, 448 (N.D.Ill.1974).

It is obvious in the case before this court that Mr. Lowenschuss, although he personally has not filed an appearance as attorney of record, is one of the main co-counsel and expects to be compensated therefor. Lowenschuss Dep. 83–84, 97. Mr. Lowenschuss, in fact, substantially represented himself throughout his deposition. *See, e. g.,* Lowenschuss Dep. 40–45.

For the foregoing reasons, it is the position of this court that Mr. Lowenschuss is not an adequate representative of the class.

*Messrs. Richard H. Faber, Marshall Pekin and Ralph Levin*

█ The defendants assert that Messrs. Faber, Pekin and Levin are inadequate class representatives because of their lack of knowledge and experience and an appearance of impropriety in the retention of their counsel. In addition, the defendants contend that Messrs. Pekin and Levin are inappropriate representatives since their CNA stock was purchased solely in their capacity as trustees and thus a conflict of fiduciary obligations exists.

It is unnecessary to analyze all of the defendants' contentions; instead, this court is of the opinion that Messrs. Faber, Pekin and Levin are inadequate class representatives because of their lack of knowledge of the instant case. The depositions of these individuals indicate a substantial lack of familiarity with the facts of this case.

For example, with regard to Mr. Faber, he stated in his deposition that he could not name one fact that was inaccurately stated in CNA documents, Faber Dep. 41, and did not personally know of any conspiracy regarding CNA stock, Faber Dep. 44. He did not see his original complaint before it was filed but has since read it. Faber Dep. 35. He has not read the First Consolidated and Amended Complaint filed in this case. Faber Dep. 35. He does not know what the legal requirements of a class action are. Faber Dep. 36. He lacked personal knowledge of the factual basis for many of the plaintiffs' allegations. Faber Dep. 45–48.

With regard to Messrs. Pekin and Levin, both of whom are attorneys seeking representative status as Trustees of the Pekin & Levin Trust, the following are examples of their lack of familiarity with the cause of action in which they are attempting to represent a class of plaintiffs. Both individuals stated that they never saw the original complaint filed in their behalf. Pekin Dep. 35, Levin Dep. 51. Neither person had read the First Consolidated and Amended Complaint which was filed in this case, Pekin Dep. 35, Levin Dep. 57, and Mr. Levin stated that he did not know a consolidated complaint was going to be filed, Levin Dep. 57.

Mr. Levin's deposition reveals that he was not aware of an interest claim by the plaintiffs relative to the Loews' tender offer, Levin Dep. 55, 62, even though the Pekin & Levin Trust tendered two hundred shares in this offer, Levin Dep. 34. Although he is an attorney, he is not familiar with Rule 23 of the Federal Rules of Civil Procedure, Levin Dep. 63, the rule pursuant to which this action was brought. He does not know the size of the class he purportedly represents, Levin Dep. 64, and he lacked information regarding several of the allegations of the complaint, Levin Dep. 85–86.

Likewise, Mr. Pekin, an attorney, has no idea of the number of plaintiffs in the class, Pekin Dep. 39, and he cannot describe the alleged class, Pekin Dep. 40. He is not familiar with the allegations of the complaint. Pekin Dep. 40. He stated he had no knowledge of wrongdoing, other than information obtained from his attorneys. Pekin Dep. 44.

Even though it is the attorneys for the class representative who direct and manage class actions, *Greenfield v. Villager Industries, Inc.,* 483 F.2d 824, 839 n. 9 (3d Cir. 1973), this court agrees with the following analysis proffered in *In re Goldchip Funding Company,* 61 F.R.D. 592, 594–95 (M.D.Pa.1974):

[F]acts regarding the personal qualities of the representatives themselves are relevant, indeed necessary, in determining whether "the representative parties will fairly and adequately protect the interests of the class." . . . The class is entitled to more than blind reliance upon even competent counsel by uninterested and inexperienced representatives. A proper representative can offer more to the prosecution of a class action than mere fulfillment of the procedural requirements of Rule 23. He can, for example, offer his

personal knowledge of the factual circumstances, and aid in rendering decisions on practical and non-legal problems which arise during the course of litigation. An attorney who prosecutes a class action with unfettered discretion becomes, in fact, the representative of the class. This is an unacceptable situation because of the possible conflicts of interest involved.

As indicated, the depositions of Messrs. Faber, Pekin and Levin reveal a significant lack of knowledge regarding the suit they seek to pursue as representatives. This court is of the opinion that the class they attempt to represent is entitled to better protection and, therefore, it is determined that these individuals are inadequate class representatives.

## Messrs. Robert S. Bassman and Seymour Trager

In their memorandum on class action issues the defendants argued that Messrs. Bassman and Trager are inadequate class representatives since they both purchased stock solely in their capacities as trustees and, thus, are in conflicting positions regarding their fiduciary obligations. Mr. Bassman seeks representative status as Trustee of the Robert S. Bassman D.D.S.P.A. Retirement Trust, and Mr. Trager brings this action as Trustee for the benefit of Stacey Ferber. The defendants' memorandum in support of sanctions against Messrs. Bassman, Trager and Lowenschuss contains the further contention that the class allegations of Messrs. Bassman and Trager should be stricken because these two plaintiffs refused to appear in Chicago for their depositions.

▪ This court feels that striking the class allegations of these plaintiffs seeking to represent a class is a sanction the strength of which outweighs the wrongdoing under these circumstances. This is not a condonation of Messrs. Bassman's and Trager's lack of cooperation in failing to come to Chicago initially for their depositions and their disregard of the federal rules which clearly outline the procedure that a person whose deposition is sought must follow if the situs of his deposition allegedly presents a problem.

▪ With regard to the defendants' contention that Messrs. Bassman's and Trager's status as trustees renders them inadequate representatives, it is the position of this court that since it has been indicated that the grantor will indemnify the trust of which Mr. Trager is trustee for all costs incurred, a conflict in his fiduciary obligations as a practical matter does not exist. On the other hand, in the case of Mr. Bassman it is unclear whether or not the Bassman trust will be indemnified for money expended in this action. However, this court is of the opinion that the indemnification issue does not control and that a person's role as trustee in and of itself does not preclude such person from being an adequate representative of a class. The defendants have cited no authority which dissuades the court in this matter.

After reviewing the depositions of Messrs. Bassman and Trager, this court determines that, although the lack of cooperation on the part of these two persons leaves much to be desired, these two plaintiffs will be permitted representational status of the class in this action.

## Messrs. Murray Seiden and Marshall Weinstein

The defendants concede that Messrs. Seiden and Weinstein can adequately represent the plaintiff class in this case. The defendants would prefer a single representative, Mr. Seiden, but are willing to accept the added representational status of Mr. Weinstein.

Mr. Seiden's deposition clearly reveals his knowledge of the alleged facts in this case, Seiden Dep. 21–22, 36, his willingness to pay the necessary costs involved in the pursuit of the plaintiffs' case, Seiden Dep. 9–10, and his willingness to travel to Chicago whenever his duties demand such travel, Seiden Dep. 10–11. Mr. Seiden has retained Chicago counsel

and out-of-town counsel. Seiden Dep. 59–60.

Although the defendants feel that Mr. Weinstein lacks knowledge of many of the allegations of his complaint, they also feel his cooperation, agreement to assume the costs involved, and the ostensible lack of any prevailing conflict of interest render him to be an adequate representative of the class.

It is the position of this court that for the foregoing reasons Messrs. Seiden and Weinstein fulfill the Rule 23(a)(4) adequate representation requirement. The interests of these two parties appear to coincide with the class interests, and both parties will undoubtedly vigorously prosecute the action. *See Dolgow v. Anderson,* 43 F.R.D. 472, 494 (E.D.N.Y. 1968).

It is hereby ordered that the plaintiffs' motion for a class action determination is granted as to all of the plaintiffs' claims under consideration here except the common law fraud claim alleged in Count V of the First Consolidated and Amended Complaint. Pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure this order is conditional and may be altered or amended before the decision on the merits.

It is further ordered that henceforth Messrs. Robert S. Bassman, Murray Seiden, Seymour Trager and Marshall Weinstein shall be the sole representatives of the class.

