**Thomas McHAN, Plaintiff,**

v.

**John E. GRANDBOUCHE, et al., Defendants.**

**No. 79–4257.**

United States District Court, D. Kansas.

March 29, 1983.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

Fred W. Phelps, Jr., Topeka, Kan., for plaintiff.

John E. Grandbouche, pro se.

Jerry and Barbara R. Manka, pro se.

Sharon Voss, pro se.

David H. Stacy, Eiberger, Stacy & Smith, Denver, Colo., for defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a diversity action in which plaintiff claims that he was defrauded by the defendants. This matter is presently before the court upon the following motions: (1) plaintiff's motion for class action certification (Doc. # 67); (2) defendants' motion for a more definite statement (Doc. # 72); and (3) plaintiff's motion for sanctions (Doc. # 76). The court has heard oral argument on these motions and is now prepared to rule. In addition, the court shall consider whether defendant John Grandbouche should be held in contempt for failure to comply with this court's order of March 24, 1981. Further, the court shall consider defendant John Grandbouche's motion for review (Doc. # 135).

■ We shall first consider plaintiff's motion for class action certification. The requirements for class action certification are contained in F.R.Civ.P. 23. Before a suit may proceed as a class action, it must be shown that all four prerequisites contained in Rule.23(a) have been met and that at least one of the subdivisions of Rule 23(b) has been satisfied. *Peterson v. Oklahoma City Housing Authority,* 545 F.2d 1270, 1273 (10th Cir.1976); *Albertson's Inc. v. Amalgamated Sugar Co.,* 503 F.2d 459, 463 (10th Cir.1974). The burden is, of course, always upon the party seeking class action certification to demonstrate, under a strict burden of proof, that their request for class action status should be granted. *Rex v. Owens,* 585 F.2d 432, 435 (10th Cir.1978); *Redhouse v. Quality Ford Sales, Inc.,* 511 F.2d 230, 236 (10th Cir.1975).

The Tenth Circuit has held that "if there is to be error made, let it be in favor and not against the maintenance of the class action." *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). However, this statement should not be read to unduly limit discretion of the trial judge in class certification matters, since discretion may well be the "key to a realistic administration of Rule 23 particularly with respect to a determination of the most fair and efficient procedure." *Wilcox v. Commerce Bank of Kansas City,* 474 F.2d 336, 344 (10th Cir.1973). In making the determination whether a class action is appropriate, it is generally held that the probability of success on the merits is irrelevant and should not be considered. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–178, 94 S.Ct. 2140, 2152–2153, 40 L.Ed.2d 732 (1974). With these basic legal principles of Rule 23 in mind, the court shall turn to the factual and procedural background of this action.

This case was filed by plaintiff on December 26, 1979. An amended complaint was filed on January 2, 1980. The essence of plaintiff's complaint is contained in the preliminary statement to his complaint wherein it is stated:

This is a diversity action by a Kansas citizen who was defrauded by Defendants pursuant to a wrongful and unlawful interstate scheme whereby Defendants purport to offer legal advice and services while disavowing that they are attorneys, upon the pretense that Defendants can counsel, advise, suggest, instruct, and otherwise prepare American taxpayers, including Plaintiff, in such a way as to relieve Plaintiff and others similarly situated from the duty to file income tax returns, and from the legal consequences of any income tax violation charges which might be brought by the federal authorities; and that Defendants would counsel Plaintiff in a promised successful defense of pending criminal charges in this Court; all upon the pretended grounds (according to Defendants) that the Constitution of the United States and the Bill of Rights thereto forbids the enforcing of income tax payments upon the citizens of this country except in times of war and for four (4) years thereafter, and that this Court had no jurisdiction in the pending criminal action against Plaintiff. Defendants are engaged in a very large, unlawful and lucrative conspiracy whereby Defendants prey upon those who find themselves in difficulty with the federal taxing authorities, bilking said persons of huge sums of money. This Plaintiff was thus victimized by Defendants. If the Court deems class action treatment an appropriate vehicle for doing justice herein, Plaintiff will fairly and adequately represent those similarly victimized by Defendants.

Specifically, plaintiff alleges the following regarding his individual claim in his amended complaint: On December 4, 1979, plaintiff, along with nineteen other fellow employees of Daniel International at the Wolf Creek power plant near New Strawn, Kansas, was charged by the government with violating 26 U.S.C. § 7205. Further, the United States Attorney let it be known that his office was investigating potential similar charges against other employees at the project. These happenings were widely reported by the media. Defendants learned

of these activities and contacted the clerk of the court in an effort to discover plaintiff's address and telephone number. After obtaining plaintiff's telephone number, defendants contacted the plaintiff. Thereafter, defendants John Grandbouche and Rex S. "Barry" Taylor, by prearrangement, met with the plaintiff and approximately eighty others from the Wolf Creek project at Emporia, Kansas, to further develop their scheme in this case. This meeting took place on December 8, 1979. At that meeting, defendants told plaintiff that if he would provide them with money and collect money from others for them, they would prepare plaintiff so he would not have to pay income taxes or even file income tax returns. Defendants further promised plaintiff that in return for his money that he and those similarly situated could avoid the need for attorneys and could prevail by following the advice of the defendants. Defendants further indicated that they had successfully defended other cases similar to plaintiff's case and his co-workers at the Wolf Creek project and that they had "never lost a case." Defendants further told plaintiff and his fellow employees that they had not filed a federal income tax return for five or six years. Plaintiff contends that such promises and representations were false, were known to be false by defendants when made, and were made by the defendants for the purpose of inducing plaintiff to rely on them. Thereafter, plaintiff did rely on these representations by paying money to the defendants and collecting money for them. On December 18, 1979, before Magistrate Crow, plaintiff thought better of his predicament and decided to seek legal counsel, and thereupon learned of the fraud of the defendants. Plaintiff alleges he has sustained actual damages in excess of $10,000.00, and further requests punitive damages in excess of $10,000.00.

The amended complaint contains further allegations of several other instances where the defendants represented and managed cases of others who suffered injury due to their assistance. The amended complaint also contains two other allegations of

wrongful conduct by the defendants. The first such allegation is contained in ¶¶ 28 and 29 of the complaint. Therein, it is stated:

28. Upon information and belief, in addition to the pending criminal trials wherein Defendants pretend to represent and defend various people with respect to income tax matters, Defendants wrongfully and unlawfully hold themselves out as expert counselors, advisors, and managers with respect to concealing funds and assets from the Government by means of foreign trust arrangements, primarily in Switzerland, Belize (formerly British Honduras in Central America), the Island of Caicos, and the Island of Turks. Defendants furthermore, on information and belief, transfer visible liquid assets for said "clients" into gold krugerrands (pure gold coins slightly more than one ounce presently valued at approximately $550 each), and said krugerrands are kept in a secret place by the Defendant Grandbouche who boasts in words substantially as follows: "I've got a vault and no one knows where it is". By these means, many hundreds of thousands of dollars, even millions of dollars, are wrongfully and unlawfully concealed and hidden from the federal taxing authorities for purposes of unlawful tax evasion.

29. Upon information and belief, Defendants have in excess of twelve thousand (12,000) so-called "clients", each having been required by Defendants to deposit with Defendants and/or pay unto Defendants a minimum of $10,000.00 "up front" for purposes of hiding and concealing said taxable income and assets from the federal taxing authorities by one or another of Defendants' various wrongful and unlawful schemes, for the ultimate purpose of wrongfully and unlawfully evading payment of federal taxes.

The other allegation of wrongdoing is contained in ¶ 30 of the amended complaint wherein it is stated:

30. Upon information and belief, Defendants further wrongfully and unlawfully abuse the processes of the courts by

a deliberate pattern and scheme whereby those judges and lawyers and government officials who oppose Defendants have wrongful and unlawful liens placed upon their real property holdings. Defendants do this through agents whom Defendants thereafter secrete from service of process. Pursuant to said wrongful scheme, and as a case in point, one Kenneth Winchell d/b/a Jarwin Enterprises, thus "liened" in excess of two hundred (200) lawyers, judges, IRS agents, public officials, and others deemed by Defendants to be their adversaries, in Colorado *. The entire law firm of DAVIS, GRAHAM & STUBBS, 2600 Colorado National Building, 950–17th Street, Denver, Colorado 80202 (Phone Number: 303/892–4322) was thus "liened" by Defendants in the name of the said Winchell. Mr. Charles Calvin, a member of said law firm, presently represents in excess of two hundred (100) plaintiffs in legal action now pending in the courts of Colorado against Mr. Winchell for purposes of removing said wrongful liens and for recovery of damages. These Defendants, having used Winchell for said wrongful and unlawful purposes, are presently secreting Mr. Winchell and concealing his whereabouts from service of process.

---

* Similar action taken against Nebraska judges, lawyers and government officials in June, 1979.

It is further alleged that the defendants' fraudulent schemes are taking place in fourteen states across the country.

In the amended complaint, the plaintiff alerted the court that it might seek to have this case certified as a class action. Plaintiff stated:

Plaintiff believes that if the information which he has obtained from what he considers to be reliable sources should prove accurate, that this case would perhaps be appropriate for class action treatment. Plaintiff believes that all requirements of Fed.R.Civ.P. 23 are present in this case. The class of people similarly victimized by Defendants would appear to be several hundred and perhaps several thousand. If the evidence supports the allegations herein with respect to the grievous nature of the conduct of Defendants, the Court may wish to utilize the class action vehicle as a means for appropriate redress to the ends of substantial justice. If so, Plaintiff is agreeable thereto and will fairly and adequately represent the class. Plaintiff is not at this time moving for class treatment, but merely intends to alert the Court to the situation and to advise the Court of Plaintiff's willingness to represent the class.

In response to the amended complaint, defendants filed various motions, primarily seeking to have the amended complaint dismissed for failure to state a claim upon which relief could be granted. On April 14, 1980, we held that plaintiff's complaint adequately stated a claim for common law fraud and denied all of defendants' motions. In that order, we also directed the plaintiff to place the class action issue before the court in a proper evidentiary posture as soon as practicable. Subsequently, plaintiff filed a motion for class action certification. In this motion, plaintiff indicated that he believed that all of the requirements of Rule 23 were met in this case. For evidentiary support, plaintiff submitted certain exhibits which he contended demonstrated that the defendants are engaged in an unlawful scheme to defraud individuals in the manner he was defrauded. Shortly thereafter, plaintiff filed a supplemental brief in support of his motion for class action certification. In this brief, plaintiff stated this action was what has been labeled a consumer-type class action, citing 7A Wright & Miller, *Federal Practice & Procedure: Civil* § 1782. In response to the plaintiff's motion, defendants filed a motion for more definite statement and a response objecting to the plaintiff's motion. In the motion for more definite statement, defendants sought to learn the exact nature and scope of the plaintiff's proposed class. In the response, defendants again indicated that the plaintiff had failed to properly identify the proposed class and objected to the evidentiary

material submitted by the plaintiff in support of the motion as inadmissible and false. With this background in mind, we shall now consider plaintiff's motion for class certification and defendants' motion for a more definite statement.

We shall first briefly comment on defendants' motion for a more definite statement. Defendants use of a motion for a more definite statement pursuant to F.R. Civ.P. 12(e) to respond to a motion for class action certification is improper. *See* 5 Wright & Miller, *Federal Practice & Procedure: Civil* § 1376, pp. 730–733. A Rule 12(e) motion can only be addressed to a "pleading to which a responsive pleading is permitted." Since a motion for class action certification is not among the pleadings contained in F.R.Civ.P. 7(a) requiring a responsive pleading, a Rule 12(e) motion may not be directed at such a motion. *See, e.g., Kenney v. Fox,* 132 F.Supp. 305, 307 (W.D. Mich.1955), *aff'd,* 232 F.2d 288 (6th Cir. 1956), *cert. denied,* 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956). Accordingly, defendants' motion for a more definite statement shall be denied. However, the court shall consider the arguments contained therein in conjunction with the defendants' response to the plaintiff's motion for class certification.

One of the requirements for a class action, although not specifically mentioned in Rule 23, is that a class must exist. *Rutherford v. United States,* 429 F.Supp. 506, 508 (W.D.Okl.1977); *Considine v. Park National Bank,* 64 F.R.D. 646, 647 (E.D.Tenn. 1974); *Williams v. Page,* 60 F.R.D. 29, 34 (N.D.Ill.1973). Further, a plaintiff must define precisely whom the purported class will include. *Adashunas v. Negley,* 626 F.2d 600, 604 (7th Cir.1980); *Alliance To End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir.1977); *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970); *Considine v. Park, supra,* at 647–648; *Williams v. Page, supra,* at 34. Greater precision in defining the class is required in a class action in which the primary concern is a grant of compensatory relief than in an action in which the primary concern is a

grant of injunctive or declaratory relief. *Battle v. Commonwealth of Pennsylvania,* 629 F.2d 269, 271 n. 1 (3d Cir.1980); *Rice v. City of Philadelphia,* 66 F.R.D. 17, 19 (E.D. Pa.1974). The class must be precisely defined if the court is to determine those who will receive notice, those who will share in any recovery, and those who will be bound by the judgment. *Vernon J. Rockler and Co., Inc. v. Graphic Enterprises, Inc.,* 52 F.R.D. 335, 338 n. 2 (D.Minn. 1971). The definition of the class is, of course, of vital importance in view of the res judicata effect of the judgment. *Alliance To End Repression v. Rochford, supra,* at 977 n. 6. *Also see Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

It is the prerequisite of the existence of a class whose bounds are precisely drawn that defendants argue that plaintiff has failed to meet. The court concurs that this requirement presents a considerable problem in this case because to this time the plaintiff has only vaguely, if at all, identified or defined the class he purports to represent. It appears to the court that plaintiff seeks to represent all individuals who have ever been damaged by the defendants' three fraudulent schemes articulated in the amended complaint. Despite the fact that we believe that the plaintiff's motion is deficient in its identification of the purported class, we do not deny the motion on that basis. Normally, we would simply allow the plaintiff to attempt to precisely define the bounds of his purported class. However, under the circumstances of this case, we observe that not only are there problems in identifying the class but also with the other requirements of Rule 23.

The vagueness of the purported class makes it virtually impossible to determine whether the requirements of Rule 23(a) are met herein. However, it is possible based on the present state of the case to determine whether at least one of the subdivisions of Rule 23(b) has been satisfied. Plaintiff has never indicated in this case under which subdivision of Rule 23(b) he was proceeding. However, plaintiff has indicated that he perceives this action as a

consumer-type action citing 7A Wright & Miller, *Federal Practice & Procedure: Civil* § 1782. Although Professors Wright and Miller acknowledge that a consumer class action might be brought under any of the three subdivisions of Rule 23(b), they suggest that actions under (b)(3) would probably be the most widely used and most effective means of providing relief to the consumer class. It appears that (b)(3) would have to be applied to the instant case because of the inapplicability of the other two subdivisions. Class certification under (b)(1) should properly be confined to those causes of action in which there is a total absence of individual issues. *In re Home-Stake Production Company Securities Litigation*, 76 F.R.D. 351, 376 (N.D.Okl.1977); *Tober v. Charnita, Inc.*, 58 F.R.D. 74, 81 (M.D.Pa.1973); 3B *Moore's Federal Practice* ¶ 23.35[1], p. 23–270. Here, the presence of individual issues, which the court will set forth in greater detail later in this opinion, renders the class unsuitable for (b)(1) classification because the need to litigate individual issues prevents the possibility of varying adjudications which might establish incompatible standards of conduct. Certification under (b)(2) is not appropriate where the relief requested is monetary in nature. *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 64 F.R.D. 43, 53 (D.Del.1974), aff'd, 611 F.2d 32 (3d Cir.1979); 3B *Moore's Federal Practice* ¶ 23.45[1], p. 23–322. Here, plaintiff seeks monetary as well as injunctive relief. Thus, certification may not be had under (b)(2). Therefore, we shall look to subdivision (b)(3) to determine if class certification should be allowed in this case.

■ Turning to the requirements of Rule 23(b)(3), the court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that the class action is the superior method of adjudication of this controversy. In considering these requirements, the court finds that plaintiff's request for class certification must fail. Plaintiff's complaint, as we acknowledged in an earlier order in this case, presents a claim for common law fraud. Courts have uniformly held that

claims of common law fraud are unsuitable for class treatment. *Wilensky v. Olympic Airways*, 73 F.R.D. 473, 479 (E.D.Pa.1977); *Clark v. Cameron-Brown Co.*, 72 F.R.D. 48, 52 (M.D.N.C.1976); *Seiden v. Nicholson*, 69 F.R.D. 681, 686 (N.D.Ill.1976); *Ungar v. Dunkin' Donuts of America, Inc.*, 68 F.R.D. 65, 144–145 (E.D.Pa.1975), *rev'd on other grounds*, 531 F.2d 1211 (3d Cir.1976); *Tober v. Charnita, Inc., supra*, at 84–85. As stated in *Seiden v. Nicholson, supra*, at 686:

> Obviously, a common law fraud claim raises issues which are personal to each individual plaintiff and, therefore, not common to the class. Since individual issues predominate on common law fraud claims, this court is of the opinion that these claims should not be certified for class determination.

The primary personal issue present in a case of common law fraud which precludes the use of the class action device is the necessity of proof of reliance by each member of the purported class. *Wilensky v. Olympic Airways, supra*, at 479; *Ungar v. Dunkin' Donuts of America, Inc., supra*, at 144–145; *Tober v. Charnita, Inc., supra*, at 84–85. In the instant case, the issue of the reliance of each class member upon the fraudulent misrepresentations of the defendants would, of course, require a separate finding of fact for each class member. Furthermore, the fact that we are dealing primarily with oral representations made at different times by the defendants raises issues which are personal to each separate plaintiff and are, therefore, uncommon to the class as a whole. *See Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 482 F.2d 880, 882 (5th Cir.1973); *Seiden v. Nicholson, supra*, at 416; *Tober v. Charnita, Inc., supra*, at 82. As the court stated in *Tober v. Charnita, supra*, at 82:

> Were plaintiffs relying solely upon oral misrepresentations which may have of necessity varied as to each class member and which would have to be individually proven, the court would have to deny class action status. *Morris v. Burchard*, 51 F.R.D. 530, 534–535 (S.D.N.Y.1971); *Moscarelli v. Stamm*, 288 F.Supp. 453,

462–463 (E.D.N.Y.1968). Where there have been oral misrepresentations the initial critical inquiry is what oral representations were made to each member of the prospective class. Individual inquiry would, therefore, be necessary.

Finally, it is apparent from the amended complaint that the members of the plaintiff's class would reside in different states, each with its own common law of fraud. This further precludes certification of a class action since questions of law as well as fact may also be significantly diverse. *See Ingenito v. Bermec Corp.,* 376 F.Supp. 1154, 1170 (S.D.N.Y.1974); *Seiden v. Nicholson, supra,* at 417.

Under the circumstances of this case, we find that a class action would not be consistent with the goal of judicial economy embodied in Rule 23, and fails the requirements of Rule 23(b)(3) that common questions of law and fact predominate and that a class action is the superior method for efficient adjudication of the controversy. Therefore, plaintiff's motion for class action certification shall be denied.

We shall now proceed to plaintiff's motion for sanctions. In this motion, plaintiff seeks to have the court strike certain pleadings filed by the defendants and requests attorney's fees and expenses incurred in responding to these pleadings. Plaintiff seeks to have the following pleadings filed by the defendants struck: (1) motion under Rule 35 F.R.C.P. (Doc. # 71); (2) motion for a more definite statement (Doc. # 72); (3) motion for the removal and suppression of exhibits (Doc. # 73); (4) response to motion for class action certification (Doc. # 74); (5) motion for order to magistrate (Doc. # 75). Plaintiff contends that these documents are frivolous and they contain scandalous and indecent matter and thus should be struck from the record pursuant to F.R.Civ.P. 11. At oral argument on this motion, defendants asserted that they believe that the pleadings are not frivolous and that there is support for the allegations made in their pleadings.

The court has thoroughly examined the pleadings filed by the defendants. Having carefully reviewed these pleadings, we do not find them to be frivolous. However, they are, for the most part, nonmeritorious as Magistrate Crow has already determined. The court is somewhat concerned about some of the material contained in these pleadings. In the past, the court has warned the defendants about filing frivolous pleadings. This order shall serve as a warning that the court will not allow the defendants to make such attacks in the future on plaintiff's counsel or his witnesses. At this time, however, the court shall deny plaintiff's motion for sanctions.

We now move to consideration of whether defendant John Grandbouche should be held in contempt for failure to comply with this court's order of March 24, 1981. The court reviewed the pertinent background of defendant Grandbouche's failure to comply with this court's order of March 24, 1981, in our order of October 19, 1981. The court will not unduly lengthen this opinion by reciting the facts contained in that opinion but rather will briefly summarize the background. On March 24, 1981, after various proceedings, Magistrate Crow ordered defendant John Grandbouche to produce certain documents for the plaintiff's inspection. Defendant John Grandbouche had objected to producing the documents on rather vague arguments based on the Fourth and Fifth Amendments to the United States Constitution. Thereafter, defendant Grandbouche failed to comply with the order. Subsequently, upon the motion of the plaintiff, we ordered defendant Grandbouche to show cause why he should not be held in contempt for failure to comply with this court's order of March 24, 1981. After various orders and delays, defendant Grandbouche appeared before the court on November 12, 1981. At that time, defendant Grandbouche informed the court that he believed that he had made every attempt to comply with this court's orders. He indicated that some of the records had been provided to the plaintiff. He further stated that some of the problems had occurred because he had been in the hospital. Plaintiff acknowledged that the defendant had

submitted some material to him. However, plaintiff stated that defendant Grandbouche had failed to provide the financial and membership records requested by the plaintiff. Defendant Grandbouche stated that he had not produced these particular records because he believed them to be protected by the First and Fifth Amendments to the United States Constitution. The court allowed the parties to brief these issues within ten days following the hearing. Thereafter, plaintiff filed a brief but defendant Grandbouche did not.

The scope of discovery under F.R.Civ.P. 26 is indeed broad. *See Harris v. Nelson,* 394 U.S. 286, 297, 89 S.Ct. 1082, 1089, 22 L.Ed.2d 281 (1969). However, Rule 26(b)(1) does limit discovery to matter that is "not privileged." A claim of privilege may be made by objection to a question asked at a deposition or by serving an objection to an interrogatory, a request for production, or a request for admission. As stated in 8 Wright & Miller, *Federal Practice & Procedure: Civil* § 2016, pp. 126–127:

> It is for the party objecting to discovery to raise the objection in the first instance and he has the burden of establishing the existence of the privilege. If the court cannot clearly determine whether a privilege exists, it may postpone decision of the question until the factual picture in which the privilege is claimed has been clearly developed.
>
> *Privileges ordinarily may be waived by their holder and there can be waiver at the discovery stage as well as at the trial.* (emphasis supplied.)

Here, defendant Grandbouche has refused to produce certain documents based on claimed privileges under the First and Fifth Amendments. Of course, the court recognizes that such privileges, if established, can prevent discovery of certain materials. *See, e.g., Black Panther Party v. Smith,* 661 F.2d 1243 (D.C.Cir.1981). In this case, the court has provided defendant Grandbouche with numerous opportunities to establish the existence of the Fifth Amendment privilege he claims. However, the defendant has refused to comply with this court's orders requiring him to provide the necessary facts for the court to determine if his claim of privilege is a valid one. Concerning his claimed First Amendment privilege, defendant Grandbouche never raised the alleged privilege at any time before Magistrate Crow and thus we find this claimed privilege to have been waived by the defendant. We further note, however, that defendant Grandbouche also failed to satisfactorily establish the existence of this privilege at the hearing of November 12, 1981, and thus we would not find that it prevented discovery of the materials sought by the plaintiff. In sum, we find that defendant Grandbouche's claims of privilege do not prevent the discovery of the materials sought by the plaintiff and that defendant Grandbouche should have complied with this court's order of March 24, 1981. However, we now believe that little would be served by finding defendant John Grandbouche in contempt of court for failure to comply with this court's order. Rather, we shall direct defendant John Grandbouche, immediately upon receipt of this order, to notify plaintiff's counsel as to where the documents and things requested by the plaintiff will be for review, inspection and copying and shall provide plaintiff's counsel with at least three dates that such inspection may be conducted between 9:00 a.m. and 5:00 p.m. during the month of April, 1983. If the defendant has failed to comply within ten days of the receipt of this order, the court shall grant plaintiff's motion for default judgment.

Finally, we shall consider defendant John Grandbouche's motion for review of Magistrate Crow's order of November 12, 1981. In the order of November 12, Magistrate Crow awarded attorney's fees in the amount of $727.59 for defendant's failure to comply with this court's orders of October 24, 1980, and December 12, 1980. In the instant motion, defendant Grandbouche contends that the award is premature, excessive and unjustified. In reviewing an order of the magistrate, this court is bound by 28 U.S.C. § 636(b)(1) which provides in pertinent part:

Notwithstanding any provision of law to the contrary—(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court.... A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the Magistrate's order is clearly erroneous or contrary to law.

Having carefully considered the arguments of the parties and the record in the case, we do not find that the magistrate's order of November 12, 1981, is "clearly erroneous and contrary to law." In fact, the order is correct and proper in all respects. Therefore, defendant John Grandbouche's motion for review shall be denied. Defendant Grandbouche shall pay the sum of $727.59 to plaintiff's counsel for fees and expenses within thirty (30) days of the date of this order.

IT IS THEREFORE ORDERED that plaintiff's motion for class action certification (Doc. # 67) be hereby denied.

IT IS FURTHER ORDERED that plaintiff's motion for a more definite statement (Doc. # 72) be hereby denied.

IT IS FURTHER ORDERED that plaintiff's motion for sanctions (Doc. # 76) be hereby denied.

IT IS FURTHER ORDERED that defendant John Grandbouche's motion for review (Doc. # 135) be hereby denied. Defendant Grandbouche shall pay the sum of $727.59 to plaintiff's counsel for fees and expenses within thirty (30) days of the date of this order.

IT IS FURTHER ORDERED that defendant John Grandbouche, immediately upon receipt of this order, comply with this court's order of March 24, 1981, as modified above. If defendant fails to comply within the period noted above, the court shall grant plaintiff's motion for default judgment. The defendant shall file with the clerk of the court the information he submits to the plaintiff. The clerk of the court is directed to mail a copy of this order to defendant John Grandbouche by certified mail, return receipt requested.

IT IS SO ORDERED.

