Warren D. NICODEMUS, Trustee of the Warren D. Nicodemus Living Trust dated August 5, 1999, and all others similarly situated, Plaintiffs,

v.

UNION PACIFIC CORPORATION, a Utah corporation and Union Pacific Railroad Company, a Delaware corporation, Defendants.

John N. Morris, Norma B. Morris and John H. Bell Iron Mountain Ranch Company, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Union Pacific Corporation, a Utah corporation and Union Pacific Railroad Company, a Delaware corporation, Defendants.

Nos. 01–CV–009–J, 01–CV–099–J.

United States District Court,
D. Wyoming.

Dec. 6, 2001.

Timothy Regan, John Massopust, Zelle, Hofmann, Voelbel, Mason & Gette LLP, Minneapolis, MN, Kim D. Cannon, Davis & Cannon, Sheridan, WY, Henry F. Bailey, Jr., Bailey, Stock & Harmon, Cheyenne, WY, John B. Speight, Hathaway, Speight & Kunz, Cheyenne, WY, for plaintiffs.

Ron Bodinson, Jason Pepe, Gregory T. Wolf, Shook, Hardy & Bacon, Overland Park, KS, Joseph M. Rebein, Shook, Hardy & Bacon, Kansas City, MO, Raymond Martin, Sundahl, Powers, Kapp & Martin, Cheyenne, WY, for defendants.

## ORDER FINDING THAT THIS COURT LACKS SUBJECT MATTER JURIS-DICTION AND ALTERNATIVELY DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

JOHNSON, Chief Judge.

This Court consolidated the claims of Warren D. Nicodemus and John N. Morris, *et al.* ("plaintiffs"). Prior to the consolidation, the plaintiffs separately moved for this Court to certify a class of persons whose parcels are encumbered by rights-of-way for railroad purposes. The Court will rule on the motions simultaneously. This Court held a hearing on the class certification motion on November 16, 2001. Following the hearing, this Court reviewed its jurisdiction to adjudicate the claims *sua sponte.* The Court, having reviewed carefully the briefs of the parties, the applicable law, all matters of record, and being fully advised, finds that it does not have subject matter jurisdiction over plaintiffs' claims and denies plaintiffs' motion to certify the class, for the reasons stated below.

### BACKGROUND

Since about 1980, Union Pacific has permitted telecommunications companies to install fiber optic cable in the soil underneath land grant railroad rights-of-way, for which it has received, and continues to receive "vast" sums of money. The plaintiffs assert that Union Pacific had no right to permit such activity because Union Pacific owned only a surface easement. These plaintiffs allege that they had the right to grant subsurface easements to the telecommunications companies.

Union Pacific admits that it permitted telecommunication companies to install fiber optic cable in the soil underneath its rights-of-way, but denies that it owned only a surface easement. In order to establish the illegality of Union Pacific's use of the rights-of-way and to recover their damages against Union Pacific for trespass and unjust enrichment seek to assert claims on behalf of a class composed of:

All persons or entities (except railroads, the United States government, govern-

ments that have treaties with the United States, or state governments) who own land in the United States that is subject to a right-of-way for railroad purposes which was obtained by Union Pacific or its predecessors directly from the United States over the public lands of the United States by virtue of any of the land grant railroad statutes of the United States Congress enacted in the years 1850 through 1874 or by the General Right of Way Act of 1875 and whereon Union Pacific has sold, purported to sell, or leased to other entities or persons the right to install, operate or maintain fiber-optic cable or other telecommunications equipment without obtaining the consent of the landowner and without payment of compensation to the landowner.[1]

## DISCUSSION

The parties have briefed the Court only on the class certification issue. This order will discuss that issue in Section II. In Section I, this Court reviews its basis for jurisdiction. It is well-settled that a federal court has a duty to investigate its jurisdiction and that it has the authority to review subject matter jurisdiction *sua sponte*. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *State Farm Mutual Automobile Ins. Co. v. Narvaez*, 149 F.3d 1269, 1270–71 (10th Cir.1998).

## I. SUBJECT MATTER JURISDICTION

Federal courts are courts of limited jurisdiction. *See Castaneda v. I.N.S.*, 23 F.3d 1576, 1580 (10th Cir.1994). That is, a federal court may entertain a case only if there are constitutional and statutory bases for its jurisdiction. *See id.* The Constitution provides that federal courts may be given jurisdiction over "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—...

to Controversies between two or more States;—between a State and citizens of another State;—between Citizens of different States ..." U.S. Const. art. III § 2, cl. 1. From this Constitutional authority, Congress has granted federal courts two bases of jurisdiction: federal question jurisdiction and diversity jurisdiction. *See* 28 U.S.C. §§ 1331, 1332.

## B. FEDERAL QUESTION JURISDICTION

Section 1331, referred to as federal question jurisdiction, allows federal courts to adjudicate a case if the case arises out of federal law. *See* 28 U.S.C. § 1331. The statute states, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* Since there is both a constitutional and a statutory grant of authority, a federal question analysis is double layered.[2]

In *Gibbons v. Ogden*, the Supreme Court held that there is federal jurisdiction under the Constitution when some element of federal law is an "ingredient" of a cause of action. *See* 9 Wheat. 1, 24, 6 L.Ed. 23 (1824). This grant of authority was broad and arguably empowered federal courts with jurisdiction over any claim that involved federal law. *See* Wright, *Federal Courts* 102 (1994).

The Supreme Court has construed Section 1331 more narrowly. It has held that a civil action arises out of federal law when "a suit arises under the law that creates the action." *American Well Works v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916). In other words, there is federal question jurisdiction, under Section 1331, if the cause of action arises out of a federal remedy. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

---

1. At the hearing, Nicodemus and Morris suggested a broader class definition in order to alleviate problems with defining an ascertainable class. The amended definition included all persons who live adjacent to Union Pacific rights-of-way.

2. As discussed in the text, the statutory grant of jurisdiction is more strict than the constitutional grant. Therefore, the constitutional standard is necessarily satisfied when the more narrow statutory standard is met. As such, most courts simply examine whether they have jurisdiction under the statutory standard.

In addition to this test, the Supreme Court has suggested that there is another basis for federal question jurisdiction.[3] The Court has stated that federal courts may exercise subject matter jurisdiction over a state law claim if an essential element of the state law claim turned on a federal question. See *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (district court has subject matter jurisdiction if "plaintiff's right to relief depends on the resolution of a substantial question of federal law"); *Franchise Tax Board*, 463 U.S. at 1, 103 S.Ct. 2841. When making the determination of whether a non-federal claim turns on a substantial question of federal law, courts should exercise "prudence and restraint." *See Merrell Dow*, 478 U.S. at 810, 106 S.Ct. 3229. Restraint is necessary because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Id.*

In the instant case, Morris claims that Union Pacific is liable for trespass and unjust enrichment, both state law claims, because it sold property rights it did not have the authority to sell.[4] Morris acknowledges that these claims are state claims. Nevertheless, Morris argues that this Court has jurisdiction because relief depends on "a substantial question of federal law." *Franchise Tax Board*, 463 U.S. at 27–28, 103 S.Ct. 2841. The substantial question Morris alludes to is the construction of the federal land grants.

A court examining whether a case turns on a question of federal law should focus on three factors: congressional intent, judicial power, and the federal system. *See Merrell Dow*, 478 U.S. at 812, 106 S.Ct. 3229. Turning to the federal land grants at issue in the instant case, the Court finds no suggestion that Congress intended to confer federal question jurisdiction over the construction of the land grants. In fact, there is no jurisdictional grant embodied in the federal right-of-way grants. *See id.*

In addition to congressional intent, this Court must also examine principles of federalism in determining whether it has subject matter jurisdiction. *See Merrell Dow*, 478 U.S. at 811, 106 S.Ct. 3229. Federal courts should hesitate to exercise jurisdiction where the "cause of action is a subject traditionally relegated to state law." *Id.* Trespass and unjust enrichment actions are traditionally reserved for state courts. Therefore, federalism concerns also militate against this Court's exercise of federal jurisdiction.

Finally, federal courts generally have jurisdiction over claims that require a federal analysis, however, this is not such a case. *See id.* This case involves federal land grants, however, nothing in the land grants or case law suggests that courts must employ a special analysis in construing these grants. *See, e.g.*, Act of July 1, 1862, 12 State. 489, as amended by the Act of July 2, 1864, 13 Stat. 356. Therefore, it follows that a court must use the traditional methods of interpretation in construing these grants. Namely, courts should follow the plain language of the land grants and consult the congressional history only where there are ambiguities.

Since the Court finds that all three *Merrell Dow* factors balance against a finding of federal question jurisdiction it finds that it does not have federal question jurisdiction in the instant case. In support of the above analysis, this Court will review several cases involving similar facts below.

The Supreme Court has discussed the issue of whether federal courts have jurisdiction over a property dispute arising out of a federal land grant in several cases. *See Kansas Pacific Railroad Co. v. Atchison, Topeka & Santa Fe Railroads Co.*, 112 U.S.

---

3. This Court notes here that there is another generally recognized basis for federal question jurisdiction—complete preemption. This is when a federal cause of action completely preempts a state cause of action relied on in a state court complaint. *See Franchise Tax Board*, 463 U.S. at 24, 103 S.Ct. 2841. In such a case, the action necessarily "arises under" federal law. In this case, the Court does not need to perform a "complete preemption" analysis because there is no federal law that preempts state trespass law.

4. Nicodemus alleges that this Court has jurisdiction under the diversity statute while Morris alleges that this Court has federal question jurisdiction. This Court will consider both arguments raising the issues without briefing.

414, 416, 5 S.Ct. 208, 28 L.Ed. 794 (1884) (finding federal question jurisdiction); *Shulthis v. McDougal*, 225 U.S. 561, 569–70, 32 S.Ct. 704, 56 L.Ed. 1205 (1912) (finding no federal question jurisdiction); *Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 506–07, 20 S.Ct. 726, 44 L.Ed. 864 (1900) (finding no federal question jurisdiction); *Blackburn v. Portland Gold Mining Co.*, 175 U.S. 571, 579, 20 S.Ct. 222, 44 L.Ed. 276 (1900) (finding no federal question jurisdiction).

In *Kansas Pacific*, the Court held that federal courts had subject matter jurisdiction. *See Kansas Pacific*, 112 U.S. at 416, 5 S.Ct. 208. That case, however, is easily distinguishable from the instant case because it was a pre-statute case. Meaning, the *Kansas Pacific* Court applied the broad constitutional "ingredient" test in finding jurisdiction, not the more narrow "federal remedy" test. *See id.* (citing the *Osborn* case—relying on the constitution not the statute). In *Shulthis*, The Supreme Court held that there was no federal question jurisdiction over western land dispute because the case did not present any controversy respecting validity, construction, or effect of the federal land grant laws. *See Shulthis*, 225 U.S. at 569–70, 32 S.Ct. 704. Similarly, in *Shoshone*, the Court held that a suit over land rights does not arise under federal law unless it presents a controversy regarding the operation and effect of federal laws. *See Shoshone*, 177 U.S. at 506–07, 20 S.Ct. 726.

Here, the problem lies in how a court interprets the land grants, not in whether the land grants are valid. In such a case, the Supreme Court has held that a state court is as competent as a federal court to interpret land grants. *See id.* at 513, 20 S.Ct. 726. In addition, the Supreme Court held that construing land grants is an integral and inherent duty of state courts. *See id.* It follows here that federal courts do not have federal question jurisdiction over the plaintiffs' claims because the substantial question involved is not about the validity of the land grants, but rather their construction. There-fore, this Court holds that it does not have federal question jurisdiction over the instant case.

## B. DIVERSITY JURISDICTION

Diversity jurisdiction is another basis for federal subject matter jurisdiction. *See* 28 U.S.C. § 1332. The statute states, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States ..." Much like federal question jurisdiction, diversity jurisdiction is double layered.

Under the Constitution, minimum diversity is necessary to invoke federal subject matter jurisdiction. *See Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806). That is, only one plaintiff had to be from a different state from another defendant. *See id.* Under the statute, however, complete diversity is necessary to properly invoke jurisdiction. *See State Farm Fire & Casualty v. Tashire*, 386 U.S. 523, 530–31, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). That is, all the plaintiffs must have different state citizenships than all the defendants.[5] *See id.*

In addition to the rule of complete diversity, the statute also requires the plaintiff to satisfy a minimum amount in controversy. *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1286 (10th Cir.2001). As stated in the statute, this figure must exceed $75,000 exclusive of costs and interests. Plaintiffs are to plead this amount in good faith, but a court may find that a plaintiff did not satisfy the amount in controversy only if the defendant shows, "to a legal certainty," that the

---

**5.** A person's citizenship is equal to his domicile. "A person's domicile is that place where he has his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." Moore, Federal Courts 161· (1994) (footnote omitted). A Corporation is a citizen of both its state of incorporation and the state where it conducts its principle place of business. *See id.* at 165.

plaintiff's damages do not satisfy the amount in controversy. *See id.*

With respect to class actions, the complete diversity rule is somewhat different. The Supreme Court instructs courts to only look at the citizenship of the named class members in determining whether there is diversity. *See Supreme Tribe of Ben–Hur v. Cauble,* 255 U.S. 356, 365, 41 S.Ct. 338, 65 L.Ed. 673 (1921). Therefore, only the citizenship of Morris, Nicodemus, and Union Pacific apply in this Court's determination of its jurisdiction. Morris and Nicodemus are both citizens of Wyoming because they live in Wyoming and they intend to remain in Wyoming indefinitely. Union Pacific Corporation and union Pacific Railroad Company, on the other hand have two states of citizenship because they are corporations. Union Pacific Corporation is a citizen of Utah, its place of incorporation and Nebraska, its hub. Union Pacific Railroad Company is a citizen of Delaware, its state of incorporation and Nebraska, its hub. The foregoing indicates that none of the named plaintiffs and defendants are citizens of the same state. Therefore, there is sufficient diversity of parties as this is a class action lawsuit.

■ In addition to diversity of citizenship, plaintiffs must satisfy the requisite amount in controversy. The Tenth Circuit takes a novel approach to the amount in controversy necessary to satisfy Section 1332 with respect to class actions. Unlike other circuits that allow class members to ride along or piggyback their claims on the named class member who satisfies the requisite amount, the Tenth Circuit requires each class member to satisfy the requisite amount in controversy. *See Leonhardt v. Western Sugar Co.,* 160 F.3d 631, 640 (10th Cir.1998).

■ In the instant case, the plaintiffs have not pled that each plaintiff satisfies the requisite amount. In fact, the plaintiffs have yet to identify all the plaintiffs. Nevertheless, this Court believes that it is not possible for each class member to satisfy the requisite amount because the named plaintiffs have suggested in their briefings that some class members have such a small stake in the litigation that if the Court denies certification, it would not be economically feasible for them to pursue an individual action. The Court finds that this admission indicates that all the plaintiffs do not have a claim valued over $75,000.[6] In the alternative, the Court finds that the plaintiffs have not sufficiently stated facts to justify this Court's jurisdiction. Therefore, this Court holds that it does not have subject matter jurisdiction over the class action.[7]

---

6. It is important to note the significance of the "either viewpoint rule" in this analysis. Since the Tenth Circuit has never discussed the either viewpoint rule, this Court relies on Ninth Circuit precedent. *See In re Ford Motor Company/Citibank,* 264 F.3d 952, 958 (9th Cir.2001). The either viewpoint rule directs courts to look at the value of a possible injunction from the perspective of both the plaintiff and defendant when determining whether the amount in controversy is satisfied. In some cases an injunction may benefit a plaintiff only nominally while costing a defendant millions of dollars. In such cases, a federal court may remove a case from state court based on the amount in controversy from the defendant's viewpoint. *See id.* In the instant case, an injunction may cost Union Pacific millions of dollars. Nevertheless, the amount in controversy is not satisfied because the cost attributed to each defendant does not exceed $75,000. *See id.* ("[w]e have specifically declined to extend the 'either viewpoint rule' to class action suits. This limitation on the rule should apply regardless of whether the requested class has been certified." Indeed, logic would dictate that it should apply to all multi-party complaints. While "[i]t may seem paradoxical to [decline jurisdiction] in the multiplaintiff setting," where the potential loss to defendants typically is well beyond the jurisdictional amount threshold, "it is implicit in the rule that forbids aggregation of class members' separate claims that it will sometimes be more difficult for a [party asserting federal jurisdiction] to establish the minimum amount of controversy in a multiplaintiff case than in a much smaller single-plaintiff case.") (internal citations omitted). This is a complicated concept, but stated in another way, the either viewpoint rule does not allow this Court to aggregate the costs of an injunction caused by the thousands of plaintiffs. Rather, it directs courts to look at the cost of the injunction that each claim would cause from the perspective of either the plaintiff or the defendant. *See id.* Here, plaintiffs have suggested that some class members own a small amount of property. This suggests that an injunction against use of that small area would neither cost Union Pacific nor benefit the plaintiff enough to sufficiently satisfy the amount in controversy.

7. The fact that some class members fail to satisfy the amount in controversy does not mean that

## II. CLASS CERTIFICATION

■ Even though this Court believes it lacks subject matter jurisdiction, it will examine the class certification issue. In determining whether to certify a class, this court must assume that the allegations made in support of certification are true and must not consider the merits of the case. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Plaintiffs bear the burden of showing that the class certification requirements have been met. *See General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Courts are to interpret Rule 23 liberally and in favor of maintenance of class actions. *See King v. Kansas City Southern Industries, Inc.,* 519 F.2d 20, 25–26 (7th Cir.1975). The policy that "favors(s) maintenance of class actions ... is especially strong in instances where denial of class status would effectively terminate further litigation ..." *Id.* Rule 23 provides a district judge with great flexibility to adopt any appropriate procedures. *See generally Eisen,* 417 U.S. at 156, 94 S.Ct. 2140. Subdivision 23(c)(1) explicitly permits district courts to certify conditionally or to decertify a class if it becomes apparent that the representation is inadequate, suggesting that judges should err in favor of certification. *See generally* 7B Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure,* Civil 2d § 1785 (2d ed.1986).

This Court may certify a class only if the plaintiff satisfies all the explicit and implicit conditions under Rule 23. *See* Fed.R.Civ.P. 23. At the threshold, there is an implicit requirement that an identifiable class exist and that the named representatives be members of the proposed class. *See Stambaugh v. Kansas Dep't of Corrections,* 151 F.R.D. 664, 671 (D.Kan.1993).

Rule 23(a) then sets forth four explicit requirements for a class action: (1) numerosity of parties; (2) commonality of legal and factual issues; (3) typicality of claims and defenses of the class representatives; and (4) adequacy of representation. A class must satisfy all four of these requirements before this Court may certify it. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("Rule 23(a) states four threshold requirements applicable to all class actions"). In addition, the class must also fit within one of the three categories of actions described in Rule 23(b). *See id.* ("In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)").

A court's decision to certify a class "usually should be predicated on more information than the complaint itself affords." 7B Wright, *Federal Practice and Procedure,* § 1785, at 107, 119 (2d ed.1986). This makes the analysis quite different from the one courts employ in deciding a motion to dismiss, in which the court may only consider the facts alleged in the plaintiffs' complaint in a light most favorable to the plaintiffs.

### A. *Class Definition*

■ Class definition is critical because it "identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled to notice in a Rule 23(b)(3) action." *See Manual for Complex Litigation* § 30.14 (3d ed.1999). A proposed class definition must not depend on subjective criteria or the merits of the case or require extensive factual inquiry to determine who is a class member. *See Cook v. Rockwell International Corp.,* 151 F.R.D. 378, 382–83 (D.Colo.1993).

Plaintiffs assert that the proposed class does not depend on the merits of the case or require extensive fact-finding. According to the plaintiffs' theory of the case, the class members are ascertainable because the class consists of all persons who own land adjoining Union Pacific rights-of-way attained via congressional land grants. According to the plaintiffs, the plaintiffs' attorneys could identify the class by identifying congressional rights-of-way and providing notice to all the adjoining parcel owners. Plaintiffs allege

this Court loses jurisdiction over the claims of those plaintiffs who have satisfied the amount in controversy. This Court, however, dismisses the entire suit because the plaintiffs have not alleged sufficient facts to demonstrate that any plaintiffs satisfy the requisite amount in controversy.

that this process will clearly and objectively identify all the class members without requiring the Court to consider the merits of the case.

Union Pacific contends that the class definition is much more complicated because the proposed definition requires the Court to inquire into the merits of the claim to determine class membership. Union Pacific asserts that a class member is one who has a right to the subsurface, not all adjoining parcel owners. In order to determine who has a right to the subsurface, Union Pacific claims that this Court would have to make preliminary findings regarding the congressional land grants. Furthermore, Union Pacific argues that the class is limited to adjoining parcel owners who did not consent to the subsoil fiber optic activity. It argues that the Court would also need to make preliminary findings to determine the consent issue.

■ It is well established that the district court should not make a determination of the merits of a case during the early stages of a class action proceeding. *See Eisen*, 417 U.S. at 177, 94 S.Ct. 2140. In *Eisen* the Court found, "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it." *Id.* At the same time, however, the district court must understand the theory of the case to determine whether the proposed class definition and class certification are appropriate. *See id.*

■ The plaintiffs' proposed definition is broad. It does not consider that every person who owns a parcel adjoining a Union Pacific right-of-way has the exclusive right to convey interests in the subsurface. Rather, plaintiffs' definition identifies adjoining parcel owners as class members and leaves the issue of their rights for later determination. In other words, plaintiffs' proposed class does not consist of persons or entities who have a fee interest in the subsoil of Union Pacific's right-of-way, but all persons or entities that own parcels adjoining to Union Pacific's right-of-way. The Court finds that this determination does not require it to make an inquiry into the merits.

The Court finds, however, that the issue of an adjoining parcel owner's consent requires it to look into the merits. The proposed class definition includes only those adjoining landowners who did not consent to the laying of underground cables or did not receive compensation from Union Pacific for the sale of such property interests. Whether the adjoining landowner is the appropriate person from whom to obtain consent or pay compensation depends on the type of interest the railroad owns in the right-of-way and whether the adjoining landowner owns any interest superior to the railroad's.

Throughout the nineteenth century Congress conveyed 25 right-of-way land grants in order to facilitate a transcontinental railroad. The Supreme Court has interpreted each land grant differently, even though they are all similarly worded. This is because the Court interpreted the grants in light of the policies it believed Congress was attempting to further at the time. According to the Supreme Court, some Congressional grants conveyed a fee interest while others conveyed a limited fee.

For this Court to determine whether a putative class member is an actual class member, this Court must review the deeds of all the thousands of putative class members and determine which congressional act granted Union Pacific a right-of-way. Then, this Court must interpret the land grants and determine whether Union Pacific received a fee interest or a limited fee interest. If this Court finds that Congress granted Union Pacific a limited fee, it must then determine the scope of the interest. If this Court finds that Congress granted Union Pacific a surface easement only, then it must determine who owns the fee, a task that requires intensive document review and, defendants argue, a chain of title search for each parcel that makes up the right-of-way and each parcel adjacent to the right-of-way. Finally, if this Court finds that the adjoining parcel owner owns the fee interest to the subsurface, it

must conduct individualized hearing of all the putative class members to determine whether they consented to the installation of fiber optic cables.[8]

As shown above, the class definition requires this Court to engage in intensive legal investigation because the class is limited to those parcel owners who did not consent to the installation of fiber optic cables. To ascertain the class members, this Court would have to first determine what type of an interest Union Pacific holds with respect to its rights-of way. Next, the Court would have to determine who the fee owner is, if it is not Union Pacific. Finally, this Court would have to conduct individualized hearings to determine the issue of consent. Therefore, the proposed definition is insufficient because it requires the Court to review the merits of the case in order to ascertain the class.[9]

### B. *Rule 23(a)*

Even if it were possible to craft a class definition that did not require inquiry into the merits and extensive factual inquiry, plaintiffs fail to satisfy the Rule 23 requirements.

### 1. *Numerosity*

■ One or more members of a class may sue or be sued as representative parties on behalf of all if the class is so numerous that joinder of all members is impracticable. *See* Fed.R.Civ.P. 23. Although the class size is the most important factor in determining impracticability of joinder, circuit courts have fashioned five other factors for district courts to consider: (1) judicial economy arising from avoiding multiple actions; (2) the geographic dispersion of the class members; (3) the financial resources of the class members; the ability of claimants to institute individual

suits; (5) requests for prospective and injunctive relief that could affect future class members. *See* 5 James Wm. Moore et al., *Moores Federal Practice* § 23.22[2] (3d ed.1999).

■ Considering the size geographic size of the proposed class it is possible that the number of qualifying class members would be in the thousands. Furthermore, the geographic scope of the class, the number of possible class members, and the fact that the putative class seeks injunctive relief supports a finding that joinder is impracticable. Therefore, the putative class would satisfy the numerosity prong of Rule 23.

### 2. *Commonality*

■ Rule 23(a)(2) does not require plaintiffs to show that all facts or legal issues are common to the class. Rather, plaintiffs "must demonstrate that there is at least one question of law or fact common to the class." *Realmonte v. Reeves,* 169 F.3d 1280, 1285 (10th Cir.1999); *accord J.B. v. Valdez,* 186 F.3d 1280, 1288 (10th Cir.1999). Because a single common issue can satisfy commonality, some courts have described the commonality standard as one that is fairly easily met. *See Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994).

■ Plaintiffs contend that "the legal issues in this case all emanate from a single, common nucleus of operative facts, all of which are admitted." Nicodemus Memorandum in Support of Certification at 13. According to the plaintiffs, Union Pacific does not dispute the common issues. Plaintiffs argue that Union Pacific has admitted that it entered into agreements with fiber optic cable companies to permit them to install the cable beneath its right-of-way and Union Pacific does not dispute that fiber optic compa-

---

8. One Kansas District Court has held that a precise class definition is less important in cases in which the plaintiff attempts to certify a class for injunctive or declaratory relief. *See McHan v. Grandbouche,* 99 F.R.D. 260, 265 (D.Kan.1983). In the instant case, plaintiffs argue that the class qualifies under 23(b)(2) because it is seeking primarily injunctive relief. As discussed below, this court finds that the plaintiffs proposed class does not qualify under 23(b)(2) because it is seeking monetary damages as well as injunctive

relief. Therefore, the Court finds that the *McHan* rule does not apply to this case.

9. This Court believes that the problem of ascertaining the class is alleviated if Nicodemus and Morris employed the broad class definition suggested in note 1. Therefore, this Court finds that the amended class definition does not present a problem with ascertaining the class insofar as this Court would not have to entertain arguments on the merits to identify the class members.

nies paid for this right. *See* Answer, ¶¶ 16–17.

The Court finds that plaintiffs have demonstrated that their case revolves around a common nucleus of operative fact because the common question is whether Union Pacific had the right to convey interests in the subsurface of its rights-of-way. Therefore, this Court finds that the plaintiffs satisfied the "loose" commonality standard.

### 3. *Typicality*

■ Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). This requirement is related to both the commonality and adequacy of representation requirements. As the Supreme Court has noted:

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements also tend to merge with the adequacy of representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

*Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). At the same time, the typicality prong is a distinct requirement "intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees. The inquiry assesses whether the named plaintiffs have incentives that align with those of the absent class members so that the absentees interests will be fairly represented." *Georgine v. Amchen Products, Inc.,* 83 F.3d 610, 631.

■ Plaintiffs contend that the class representative's claims are typical of the class members' claims because all the claims involve common questions of law. First, plaintiffs contend that the action is governed by

federal common law because the dispute arises out of federal land grants. Furthermore, the plaintiffs argue that there is little substantive difference among state laws regarding unjust enrichment, the acquiescence doctrine, statute of limitations, and trespass. *See* Morris Memorandum in Support of Certification at 6.

Union Pacific contests the typicality between the representatives' clams and the members' claims. According to Union Pacific, the issue is not whether it granted fiber optic companies the right to lay cable underneath its rights-of-way. Rather, the issue is whether it had a right to do so. According to Union Pacific, this determination requires individualized inquiries into Union Pacific's interest. If the Court finds that Union Pacific did not have the right to allow fiber optic companies to lay cable, the next inquiry would be whether the individual plaintiff did. This analysis would necessarily differ from parcel to parcel because of chain of title problems and the different congressional acts used to grant the rights-of-way. Furthermore, Union Pacific argues that individualized inquiries are necessary to determine the statute of limitations, acquiescence law, trespass law, the law of unjust enrichment, and damages because the putative class comes from 22 different states.

This Court finds that plaintiffs' cause of action raises two separate legal questions related to landownership: (1) the extent of Union Pacific's interest in the rights-of-way; and (2) adjoining parcel owner's interest in the land beneath the rights-of-way. While these two general questions may be common to the class, this alone does not suffice to meet the typicality requirement because federal grants are far from uniform.

After 1871, Congress generally discontinued its practice of granting railroads fee title to lands in the West and granted only easements instead. *See Great Northern Ry. Co. v. United States,* 315 U.S. 262, 274, 62 S.Ct. 529, 86 L.Ed. 836 (1942). That does not mean, however, that prior to 1871 Congress always granted outright ownership to the railroads. *See, e.g., United States v. Union Pac. R.R. Co.,* 353 U.S. 112, 114, 77 S.Ct. 685,

1 L.Ed.2d 693 (1957) (holding that railroad's rights under 1862 Act were for surface easement only). This brief discussion of the differences in federal land conveyance statutes is not meant to describe the full scope of federal land grant legislation, but rather is meant to show that the Court would have to examine carefully the authorizing legislation for any interest Congress conveyed to Union Pacific.

This Court further finds that different states impose different legal requirements with respect to trespass, acquiescence, the statute of limitations, and unjust enrichment. As a result, it is difficult to conclude that plaintiffs' claims are typical of the class. Given the potential legal differences between the plaintiffs' claims and those of the class members, the Court doubts that plaintiffs' claims are typical of the class. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340–41 (4th Cir.1998); *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir.1998); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir.1993).

As the Sixth Circuit noted, "[t]he premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class. That premise is not valid here." *Sprague*, 133 F.3d at 399. Similarly, that premise does not fit in the instant case. Therefore, the Court holds that the representative's claims are not typical of the classes.

#### 4. *Adequacy of Representation*

 In order for plaintiffs to be fair and adequate representatives of the class, three requirements must be met: (1) counsel must be qualified, experienced and generally able to conduct the proposed litigation; (2) the class representatives must have sufficient interest in the outcome to ensure vigorous advocacy; and (3) the class representatives must not have antagonistic or conflicting interests with other members of the proposed class. The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625, 117 S.Ct. 2231.

Union Pacific does not contest that the plaintiffs' attorneys are qualified, experienced and able generally to conduct the proposed litigation. Instead, Union Pacific challenges the representation of the named plaintiffs on the grounds that they have conflicting interests with the proposed class members and are subject to unique defenses.

 For many of the same reasons that the proposed class does not meet the typicality requirement of subsection 23(a)(3), the Court finds that the class does not satisfy the adequacy of representation under 23(a)(4). Plaintiffs are not adequate representatives of the proposed class because: (1) their interests in the right-of-way differ from those of the absent class members because the United States used different Acts with different interpretations to create the rights-of-way; (2) Wyoming law regarding trespass, unjust enrichment, and acquiescence differ from the laws of the 21 other states where class members are from; (3) their notice of installation may differ from the class member's notice of installation. In short, plaintiffs are not typical of the class so they are not adequate class representatives.

#### C. *RULE 23(b)*

Even assuming that the proposed class could meet all four requirements of Rule 23(a), plaintiffs would still need to establish that the action conforms with one of the three categories of Rule 23(b). Plaintiffs focus on subsections (b)(2) and (b)(3). For the reasons stated below, this Court finds that the plaintiffs have not met the standard of either subsection.

#### 1. *Rule 23(b)(2)*

 Certification is appropriate under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ. p. 23(b)(2). Generally, courts certify classes under Rule 23(b)(2) when a plaintiff seeks both injunctive relief and monetary damages if the monetary damages are "secondary" or

"incidental" to the injunctive relief. Federal courts have consistently held that class certification, under Rule 23(b)(2), is not appropriate if the damage claims "predominate" the plaintiff's request for injunctive relief. *See* 5 Moore's Federal Practice § 23.43[3][a]; *See, e.g., Parker v. United Steelworkers of* America, 642 F.2d 104, 107 (5th Cir.1981); *Cook v. Rockwell Intern. Corp.,* 151 F.R.D. 378, 387–88 (D.Colo.1993) (finding that class certification was not barred by Rule 23(b)(2) because injunctive relief regarding medical monitoring program was primary and monetary damages were incidental).

■ The Fifth Circuit has held that under Rule 23(b)(2), monetary relief is not incidental if the determination of monetary relief requires the court to make individualized inquiries as to damages. *See Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 411–18 (5th Cir.1998). In other words, damages are incidental if they flow to the class as a whole in connection to plaintiffs' injunctive claims, not if they rely on subjective differences between class members.

■ In the instant case, plaintiffs seek an injunction against Union Pacific and they also seek damages for unjust enrichment and trespass. The plaintiffs allege that the Court could order Union Pacific to place all the unlawful funds it received into a pot and reimburse the plaintiffs *pro rata.* Furthermore, the plaintiffs argue that the unjust enrichment remedy is equitable in nature. Therefore, the plaintiffs argue that this Court should certify the class under Rule 23(b)(2).

Union Pacific argues that the determination of damages requires individualized hearings because real property is unique and each parcel owner's compensation would depend on the location of the plaintiff's parcel. At the hearing, Nicodemus and Morris explained to the Court that plaintiffs' recovery would depend on the contract between Union Pacific and the fiber optic companies that corresponded to each plaintiff's parcel. That is, each plaintiff would recover only the amount the fiber optic companies paid Union Pacific with respect to their parcel. This division necessarily requires an individualized inquiry because this Court would have to match contracts with parcels and divide accordingly. Such damages do not flow to the class as a whole because there is not a pure *pro rata* division where the Court would grant equal recovery to each plaintiff on the basis of the amount of property it owns adjoining the right-of-ways. As such, the monetary damages do not flow to the class as a whole and are not incidental to the injunctive relief plaintiffs seek. Therefore, this Court holds that the class does not qualify for certification under Rule 23(b)(2).

### 2. *Rule 23(b)(3)*

Rule 23(b)(3) requires "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to the other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Rule 23 lists several factors that are pertinent to the inquiry, including "the difficulties likely to be encountered in the management of a class action." *Id.*

The predominance inquiry tests whether "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,* 521 U.S. at 623, 117 S.Ct. 2231. More demanding than the commonality requirement under 23(a), "the predominance test asks whether a class suit is economical and efficient in the context of all issues in the suit." Newberg and Conte, *Newberg on Class Actions* § 4.25 (3d ed.1982). The advisory committee notes for Rule 23 explain that this subdivision "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed.R.Civ.P. 23, Advisory Committee Notes, 39 F.R.D. 98, 102–103 (1966).

■ This Court finds that common issues do not predominate over the individual ones. In order to resolve the dispute, this Court would need to undertake the following tasks, among others: (1) analyze thousands of acquisition documents and possibly perform as

many chain of title searches to determine the competing interests of each class member and the railroad in the right-of-way; (2) determine whether each class member or a previous landowner consented to the installation of the cable; (3) assess damages to each class member's property. This highly individualized inquiry would not promote economies of time, effort and expense but instead would require the Court to conduct thousands of mini-trials.

 Much as the predominance test, the superiority requirement is founded on notions of judicial economy. *See* Newberg and Conte, *Newberg on Class Actions* § 4.32. In addition to the consideration of manageability, the Court should take into account factors such as conserving time, effort and expense and providing a forum for small claimants. *See id.* This Court finds that the proposed class would be unmanageable because of the predominance of individual issues. The Court also finds that the class action is not a superior method of adjudication because of the time required to decide all the individualized claims. As such this Court holds that the common issues do not predominate and that a class action is not the superior way of going forward with the litigation.

Accordingly, and for the foregoing reasons, this Court DISMISSES the case for lack of subject matter jurisdiction and also DENIES plaintiffs' motion for class certification. It is therefore

**ORDERED** this case is **DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**; It is further

**ORDERED** that plaintiffs' motion for class certification is **DENIED**.