**Brad SKINNER, on his own behalf and on behalf of other persons similarly situated, Plaintiffs,**

v.

**Judith UPHOFF; Vance Everett; James Hewitt; David Ebell and John does 1 through 6; all of them in their individual and official capacities, Defendants.**

No. 02–CV–33–B.

United States District Court, D. Wyoming.

Aug. 2, 2002.

Timothy C. Kingston, Graves, Miller & Kingston, Cheyenne, WY, Shirley Kingston, Laramie, WY, Stephen L. Pevar, American Civil Liberties Union, Hartford, CT, for plaintiffs.

Steven Richard Czoschke, Wyoming Attorney General, Cheyenne, WY, for defendants.

## ORDER GRANTING CONDITIONAL CLASS CERTIFICATION

BRIMMER, District Judge.

This case arises out of a challenge to the existing conditions at the Wyoming State Penitentiary in Rawlins. Plaintiff is suing on his own behalf and on behalf of current and future inmates of the prison, alleging that the policies, practices and customs of Defendants place the inmates at the risk of unprovoked assault, bodily injury, and death at the hands of other inmates. The case is now before the Court on Plaintiff's motion for class certification. After reading the briefs, hearing oral argument, being fully advised of the premises, and in accordance with the oral findings and ruling from the bench at the hearing in this matter, the Court **FINDS** and **ORDERS** as follows:

### Statement of Parties and Jurisdiction

Plaintiff Brad Skinner is currently serving a sentence imposed for a violation of law in the State of Wyoming. Plaintiff has been placed under the care, custody and control of the Wyoming Department of Corrections ("WDOC"). Since Plaintiff's sentence in October of 1999, he has been incarcerated at the Wyoming State Prison ("WSP") in Rawlins, Wyoming. Plaintiff Skinner filed this suit on behalf of himself and all other inmates of WSP as a class action pursuant to Fed.R.Civ.P. 23(b)(1) and (b)(2) for purposes of obtaining declaratory and injunctive relief.

Defendant Judith Uphoff is a citizen and resident of Wyoming, and is being sued in her individual and official capacities. Defendant Uphoff has been Director of the WDOC at all times material to this action. As Director, Uphoff is the agency official ultimately responsible under state law for the operation and administration of WSP.

Defendant Vance Everett is a citizen of Wyoming, and is being sued in his individual and official capacities. Defendant Everett has been Warden at WSP at all times material to this action. With regard to Plaintiff's claim for injunctive relief, Everett is now the Complex Administrator of the WSP. In both capacities he had and has a duty and obligation under state law to ensure, among other things, that inmates are protected against unprovoked assault by other inmates.

Defendant James Hewitt is a citizen of Wyoming and is being sued in his individual and official capacities. Defendant Hewitt has been a security officer at WSP at all times material to this action. Hewitt's duties have included ensuring the safety and protection of WSP inmates.

Defendant David Ebell is a citizen of Wyoming and is being sued in his individual and official capacities. Defendant Ebell has been a security officer at WSP at all times material to this action. Ebell's duties have included ensuring the safety and protection of WSP inmates.

Defendants John Does One through Six are security officers who were assigned to monitor the living unit in which Plaintiff Skinner resided on the day and time he was assaulted and whose duties included ensuring Skinner's safety. At the time Plaintiff filed his Complaint in this action, the actual identity of these Defendants was unknown, however, Plaintiff intends to obtain the names of these Defendants through pretrial discovery.

Jurisdiction of this Court is asserted pursuant to 28 U.S.C. §§ 1343(3) and (4) as this action seeks relief pursuant to 42 U.S.C. § 1983. Venue is proper pursuant to 28 U.S.C. § 1391(b).

### Background

Plaintiff Skinner, an inmate at WSP, was transferred from a housing unit to B–Star, Block 4, a "closed custody" housing unit on November 4, 1999. The unit is built in the shape of a star with the security rotunda in the middle. B–Star is in the North prison, which has been closed since Skinner's attack and no longer houses inmates. Inmates have been moved to the new South prison, and to other in-state and out-of-state facilities.

Plaintiff alleges that within an hour of his arrival in B–Star, an inmate informed him that other inmates did not welcome his presence, and that he would be assaulted if he stayed. Plaintiff took this threat seriously and reported it to the guards. Defendant Ebell escorted Plaintiff to Defendant Hewitt's office, where Plaintiff proceeded to tell Hewitt of his fear of assault, during which account, Plaintiff was so scared that he broke down and cried. Plaintiff pleaded with Hewitt to move him to another tier. Plaintiff alleges that Hewitt berated, insulted and yelled at Plaintiff and then forced Plaintiff to sign a statement that Hewitt had written saying that Plaintiff felt safe returning to his cell (such document has since disappeared). Now Plaintiff was even more afraid since the inmates who had threatened him would have seen him go straight to security to "tattle."

Ebell was present in the room during Plaintiff's conversation with Hewitt. In the report that Ebell wrote the next day, he said that he "called Yard observation, B–Unit and Central Control to tell them to monitor [Plaintiff] and also to pass this info on to the second shift." Defendants named as Does 1–6 were the officers instructed as above by Ebell.

Plaintiff was returned to his cell in B–Star, where 3 inmates subsequently entered his cell and assaulted him. One of the inmates was allegedly wearing a stocking cap and a white scarf obscuring his face. They began to beat Plaintiff.

Cell doors are generally left open during the day, but are closed periodically during "Count" where officers walk through the unit and check on each inmate. One of these Counts occurred during the beating. The three assailants left Plaintiff's cell and told him to keep quiet. He did, and though there was blood all over his face, and during Count, an officer performing the checks saw this, nothing was done. After Count, the three assailants returned to Plaintiff's cell and continued to beat and kick him.

Plaintiff passed out from the pain during the beating. When he regained consciousness, he yelled for help. Guards arrived, took photographs of his injuries, and sent him to the hospital. Plaintiff suffered separations in his vertebrae, a concussion, contusions, swelling and a broken nose. He continues to suffer from back pain, migraine headaches, blurred vision and other psychological and physical pain and suffering.

Plaintiff spent five weeks in the prison infirmary. During this time, he alleges that Defendant Hewitt yelled at him after hearing that he may file a lawsuit, and Plaintiff feared retaliation. Plaintiff asserts that he has fully exhausted his administrative remedies to no avail and that conditions at the prison remain the same—as do the systematic inadequacies that left him unprotected in the first place and also threaten all other inmates.

Plaintiff asserts that Defendants Uphoff and Everett have developed and pursued policies and customs that created the substantial risk of bodily harm to the Plaintiff and other inmates, which evidence a deliberate and gross failure to supervise their subordinates. These acts and omissions allegedly include: 1) failure to hire a sufficient number of cor-

rections officers for WSP; 2) failure to train corrections staff in matters of inmate health and safety; 3) failure to take steps after each inmate assault occurred to determine whether staff misconduct led to the assault and whether remedial action was necessary to prevent future assaults; and 4) failure to ensure that corrections staff adequately report and document threats made to inmates regarding their safety. Plaintiff alleges that these failures remain unremedied.

Plaintiff further points out that the United States Department of Justice ("DOJ") performed an investigation of the WSP which found the WSP seriously lacking in certain respects, and this is proof that the Defendants knew of the dangers and have continued to subsequently disregard them. The DOJ report was issued in June of 1999 and concluded that WSP was understaffed and dangerously overcrowded and that these conditions, among other things, led to injurious assaults by inmates on other inmates.

Plaintiff seeks compensatory damages against all defendants and punitive damages against Hewitt individually based upon 42 U.S.C. § 1983. Plaintiff also seeks injunctive and declaratory relief on his own and the other prisoners' behalf requesting that the Court order Defendants to train staff in how to handle and investigate threats such as those to Plaintiff; to thoroughly investigate each inmate assault to determine whether it could have been prevented by staff and whether staff misconduct led to or encouraged the assault; to issue written findings after each assault; and to ensure that non-compliant or untrained staff receive discipline or training. Plaintiff also requests that the Court direct Defendants to ensure that incident reports, documents, and logs are properly made and retained regarding incidents of inmate assault.

### Discussion

Plaintiff has moved for class certification pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of all present and future inmates of WSP. In order to maintain a class action, Plaintiff bears the burden of showing that the class certification requirements have been met. *Rossin v. Southern Union Gas Co.,* 472 F.2d 707, 712 (10th Cir.1973). The requirements for class action certification contained in Fed. R.Civ.P. 23 require that all four prerequisites contained in Rule 23(a) be met and that at least one of the subdivisions of Rule 23(b) has been satisfied. Fed.R.Civ.P. 23(b); *see* *McHan v. Grandbouche,* 99 F.R.D. 260, 262 (1983) citing *Peterson v. Oklahoma City Housing Authority,* 545 F.2d 1270, 1273 (10th Cir.1976).

Under Rule 23(a), the plaintiff must satisfy four prerequisites to certify a class. "First, the class must be so numerous that joinder of all members is impracticable ('Numerosity'). Second, there must be questions of law or fact common to the class ('Commonality'). Third, the claims or defenses of the representative parties must be typical of the claims or defenses of the class ('Typicality'). And fourth, the representative parties must fairly and adequately protect the interest of the class ('Adequate Representation')." *Realmonte v. Reeves,* 169 F.3d 1280, 1285 (10th Cir.1999).

Once the four requirements of Rule 23(a) are satisfied, the Plaintiff must then establish that the case fits within one of the three subcategories of Rule 23(b). Fed.R.Civ.P. 23(b). Plaintiff has moved to certify the class under Rule 23(b)(2), which requires a showing that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

In *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir.1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459, (1969), the Tenth Circuit held that "if there is to be error made, let it be in favor and not against the maintenance of the class action." *Id.* However, the Tenth Circuit has also indicated that this "doctrine should not be extended to limit unreasonably the sound discretion of trial courts in cases such as this, where discretion may be the key to a realistic administration of Rule 23, particularly with respect to a determination of the most fair and efficient procedure." *Wilcox v. Commerce Bank of*

*Kansas City,* 474 F.2d 336, 344 (10th Cir. 1973).

### Rule 23(a) Analysis

#### A. Numerosity

■ The proposed class potentially includes over 700 inmates currently confined at WSP and any persons who will be confined at WSP in the future. The proposed class is sufficiently numerous, and Defendants do not appear to dispute this contention. The Court also notes that numerosity is met where, as here, the class includes individuals who will become members in the future. As members *in futuro,* they are necessarily unidentifiable, and therefore joinder is clearly impracticable. *See Phillips v. Joint Legislative Committee,* 637 F.2d 1014, 1022 (5th Cir.1981); *Tonya K. v. Chicago Board of Education,* 551 F.Supp. 1107, 1110 (N.D.Ill.1982). Therefore, the Court finds that the numerosity requirement of Rule 23(a)(1) is satisfied.

#### B. Commonality

■ Rule 23(a)(2) does not require plaintiff show that all facts or legal issues are common to the class. Rather, commonality requires that the plaintiff show only a single issue common to the class. *J.B. ex. rel. Hart v. Valdez,* 186 F.3d 1280, 1288 (10th Cir. 1999). "Because a single common issue can satisfy commonality, some courts have described the commonality standard as one that is fairly easily met." *Nicodemus v. Union Pacific Corporation,* 204 F.R.D. 479 489 (D.Wyo.2001) (citing *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994)). Plaintiff's suit involves two overall claims: 1) Plaintiff seeks individual damages for the violation of his own Eighth Amendment rights, and 2) Plaintiff seeks broad injunctive relief challenging the policies, practices, and customs of Defendants Uphoff and Everett that violate the Eighth Amendment rights of the class of all current and future WSP inmates. With respect to the injunctive portion of the case, Plaintiff alleges that virtually every issue of fact and law is common to the class as a whole. For example, the issues of fact concern whether the Defendants have turned a blind eye to inmate-on-inmate assaults by failing to train and supervise correctional staff in prevention of inmate-on-inmate violence and by failing to investigate each inmate assault to determine whether staff malfeasance precipitated it and to then discipline malfeasant staff. Defendants do not address the issue of their policies and customs in this respect.

■ Under the liberal commonality standard as stated above, the Court finds that the Plaintiff has demonstrated that this case revolves around a common nucleus of operative facts, namely the policies and customs of the prison regarding inmate-on-inmate violence. Therefore, Plaintiff has satisfied the Rule 23(a)(2) commonality requirement.

#### C. Typicality

■ Typicality under Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). The typicality requirement is met "[s]o long as there is a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class...." *Queen Uno Ltd. Partnership v. Coeur D'Alene Mines Corp.,* 183 F.R.D. 687, 691 (D.Colo.1998). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani,* 987 F.2d 931, 936–37 (2d Cir.1993); *Inmates of the Attica Correctional Facility v. Rockefeller,* 453 F.2d 12, 24 (2d Cir.1971) (finding typicality on prisoners' brutality claim).

In the present case, Plaintiff's claims and the class claims appear to be identical—in that by failing to properly train and supervise correctional officers regarding inmate-on-inmate violence, and by failing to adequately investigate and discipline staff misconduct regarding this violence, Defendants Uphoff and Everett are violating the Eighth Amendment rights of all present and future WSP inmates. Therefore, the typicality requirement is satisfied.

### D. Adequacy of Representation

There are two aspects of the adequacy of representation element under Rule 23(a)(4), that of the class counsel and that of the named class representative. First, the class counsel must be qualified, experienced and generally able to conduct the proposed litigation; and second, the class representative must have a sufficient interest in the outcome and must not have antagonistic or conflicting interests with other members of the proposed class. *Nicodemus,* 204 F.R.D. at 491.

In the present action, there appears to be no dispute as to the qualifications or ability of the class counsel or the class representative. Therefore, the Court finds that counsel and the representative adequately represent the interests of the class of all current and future WSP inmates for maintenance of this action.

### Rule 23(b)(2) Injunctive or Declaratory Relief

█ Certification is appropriate under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Plaintiff claims that the requirements of Fed.R.Civ.P. 23(b)(2) have been met as the Plaintiff is seeking systematic declaratory and injunctive relief against the policies, practices, and customs of the Defendants that purportedly violate the Eighth Amendment rights of present and future WSP inmates. It is well established that civil rights actions are the paradigmatic 23(b)(2) class suits, for they seek classwide structural relief that would clearly redound equally to the benefit of each class member. *Alliance to End Repression v. Rochford,* 565 F.2d 975, 979 n. 9 (7th Cir.1977). However, Defendants argue that certification is not appropriate pursuant to 23(b)(2), as the concerns that are raised have already been addressed in the settlement agreement entered into between the State of Wyoming and the DOJ, and that the agreement shows that the concerns of the class relating to Defendants' alleged refusal to address their policy and practices regarding inmate violence have in-

deed been addressed. Plaintiff argues that the report was too vague and general to effect any real changes.

As discussed more fully at the hearing in this matter, the Court will conditionally certify this class action pursuant to Fed.R.Civ.P. 23(c)(1) to facilitate full and fair discovery on all issues. The Court will revisit this conditional certification at the time of the dispositive motions hearing.

### Conclusion

Therefore, for all of the aforementioned reasons, the Court **FINDS** that Plaintiff has adequately shown that he can fulfill the elements of Fed.R.Civ.P. 23(a) and (b)(2) for this Court to conditionally certify this action as a class action pursuant to Fed.R.Civ.P. 23(c)(1). The Court will revisit this conditional certification at the dispositive motions hearing.